IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANICE JACKSON, INDIVIDUALLY, § <br> AND AS REPRESENTATIVE OF THE § <br> ESTATE OF HER LATE HUSBAND, § <br> MICHAEL WAYNE JACKSON; ARLENE § <br> GALLIEN, INDIVIDUALLY AND AS § <br> REPRESENTATIVE OF THE ESTATE OF § <br> CARL WILEY JR.; CAMILA SIMPSON AS § <br> NEXT FRIEND OF XXXXXXX XXXXX, § <br> GYNELL HENDERSON, INDIVIDUALLY § <br> AND AS REPRESENTATIVE OF THE § <br> ESTATE OF RASHAD HENDERSON; AND § <br> JOHN HENDERSON JR., INDIVIDUALLY, § <br> *Plaintiffs*, § <br> § <br> V. § <br> § <br> THE CITY OF HOUSTON, § <br> *Defendant*. § | CIVIL ACTION NO. 4:23-CV-00052 |

**DEFENDANT CITY OF HOUSTON'S OPPOSED MOTION TO SEVER AND
PARTIALLY DISMISS FOR IMPROPER JOINDER**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant City of Houston ("Defendant" or "City") files this Motion to Sever Plaintiffs' improperly joined claims into three separate actions and Dismiss the City from the actions related to alleged injuries and deaths of Carl Wiley, Jr., and Rashad Henderson. In support, the City respectfully shows the following:

**A.     Severance of Improperly Joined Parties**

Federal Rule of Civil Procedure 21 governs misjoinder of parties and provides:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

FED. R. CIV. P. 21.

Under Rule 21, a district court has "broad discretion" to sever an action if it is misjoined or might otherwise cause delay or prejudice. *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995); *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000) (citing *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994)); *see also Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). To determine whether parties were properly joined under Rule 20(a), a district court must consider whether (1) the right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there is a question of law or fact common to all of the plaintiffs that will arise in the action. FED. R. CIV. P. 20(a). **Both** requirements must be met for the parties to be properly joined. *Id.* A district court also has discretion to sever claims under Fed. R. Civ. P. 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b).

**B.     Claims Improperly Joined by three sets of Plaintiffs arising out of three different Car Accidents**

Janice Jackson as the alleged surviving wife of Michael Wayne Jackson initiated this action in state court asserting negligence claims against the City pursuant to the Texas Tort Claims Act. Doc. 1-1. Jackson asserts claims arising exclusively from the death of Michael Wayne Jackson on December 4, 2021. Doc. 4-1 at ¶61-62.

On December 16, 2022, Jackson filed an amended petition adding two additional sets of plaintiffs who assert claims arising from the deaths of Carl Wiley on February 7, 2020, and Rashad Henderson on December 17, 2020. *Id.* at ¶¶58, 67.

All three deaths resulted from a motor vehicle accident. However, **only Jackson's accident was with an HPD vehicle or vehicle driven by an HPD officer**. Both Henderson and Wiley were killed by collisions with vehicles driven by private parties not employed by the City or acting under its control whose intentional and criminal conduct caused the deaths of Henderson

and Wiley.

In the amended petition, the Plaintiffs attempt to assert 42 U.S.C. § 1982 and § 1983 actions by claiming HPD officers engage in discriminatory traffic stops and vehicular pursuits of Black suspects in Black neighborhoods, although Plaintiffs do not allege that either Wiley, Jackson, or Henderson were the targets of intentional discrimination by HPD, traffic stops or vehicular pursuits by HPD officers.  Doc. 4-1.

**Michael Wayne Jackson** was not killed by officers engaged in a pursuit or traffic stop. Jackson was allegedly struck by an HPD vehicle driven by an officer en route to assist with a pursuit in progress elsewhere that had already terminated.  Doc. 4-1 at ¶¶61-62.  Plaintiffs try to call this a pursuit by claiming "Officer Orlando Hernandez and his partner **initiated their own pursuit to join the case,**" but they admit Officer Hernandez was not in close proximity to the fleeing suspect, did not have a visual on the suspect vehicle, was not part of the primary pursuit or the secondary response unit, had neither requested nor received authorization from his supervisor to engage in "the pursuit."  *Id.* at ¶62.  Plaintiffs allege that Officer Hernandez recklessly drove his vehicle at high speeds in slippery conditions, swerved as he approached an intersection and veered his vehicle onto the sidewalk, striking Jackson who was a pedestrian.  Doc. 4-1 at ¶¶61-62. Plaintiffs do not allege Officer Hernandez or his partner knew Jackson's race or were aware that he was on the sidewalk.  *Id.* at ¶¶61-63.  Their claims rely on an earlier pursuit of five Black suspects by other officers at another location and the site of the accident in an area of town Plaintiffs characterize as "Black."  *Id.* at ¶63.

**Carl Wiley, Jr.** was not killed by an HPD officer or vehicle.  He was killed by a fleeing driver, Cameron Rogers, who after leading officers on a pursuit, ran a red light at high speeds and struck Wiley's vehicle.  *Id.* at ¶¶58-60.  Cameron Rogers has been indicted for aggravated assault

3

with a motor vehicle and causing the death of Carl Wiley.[1]

**Rashad Henderson** was not killed by an HPD vehicle or officer or during an HPD pursuit. Doc. 4-1 at ¶¶68-69. According to the pleadings, HPD officers responded to a call from the suspect's mother who reported her 16-year-old runaway daughter had stolen her vehicle. *Id.* When officers attempted to stop the vehicle, the 16-year-old fled and led officers on a dangerous pursuit. *Id.* **The HPD officers terminated the pursuit, however, because the girl was driving too dangerously**. *Id.* at ¶68. One officer said "it's not worth it to me. She's driving too crazy." *Id.* The other noted, "if we can get her while she's stopped, we'll get her while she's stopped." *Id.*

"Ultimately, the teenager turned north on Galveston Road, where she struck Rashad Henderson's vehicle at a high rate of speed, thereby pushing Mr. Henderson's vehicle off the road and into a tree." *Id.* at ¶69.

**Plaintiffs admit that HPD had abandoned the pursuit.** They conclude however that the HPD officers who had abandoned the chase "caused the teenager to continue to drive in an unsafe, erratic manner" by failing to disclose the decision to terminate the chase to officers in "assisting jurisdictions." *Id.* It is unclear whether the teenager was being chased by officers in other jurisdictions for her admittedly "unsafe, erratic" driving, before striking Henderson's vehicle, or simply continued to drive dangerously as she had been. Plaintiffs do not allege that the teenager would have known of any HPD communications with other jurisdictions or how they could have caused her continued intentional and criminal conduct. HPD is not responsible for either the intentional and criminal acts of the fleeing suspect or her pursuit by law enforcement in other jurisdictions. The earlier pursuit of the suspect was not the result of any racial profiling or

---

[1] *The State of Texas v. Cameron Rogers*, Cause No. 175794801010 in the 338th Criminal District Court of Harris County, Texas. The Court may take judicial notice of public records and proceedings of another court under Federal Rule of Evidence 201, certified copies of which are attached as **Exhibit 1**.

discriminatory targeting by HPD officers but the admitted 9-1-1 call by the suspect's mother who reported a crime. Doc. 4-1 at ¶68-69.

The pleadings do not allege that HPD officers cause suspects to flee and evade at high speeds in motor vehicles in order to discriminatorily pursue them. The pleadings do not establish that HPD officers control the fleeing suspects' chosen location or route or reckless and criminal actions so that the suspect will injure and kill bystanders based on their race or the alleged racial demographics of the neighborhood where the bystanders happen to be.

C.  **Severance is necessary to prevent prejudice and the Plaintiffs' attempt to bootstrap themselves into nonexistent claims**

The Plaintiffs' improperly joined claims should be severed into three separate actions pursuant to Fed. R. Civ. P. 21. None of the Plaintiffs' assertions for a right to relief arise out of the same transaction or occurrence or series of transactions or occurrences, nor raise a common question of law or fact. The imagined theories of liability cannot be made to fit each Plaintiff's allegations. Plaintiffs do not satisfy—even after a broad and generous construal of the complaint—the "same transaction, occurrence, or series of transactions or occurrences" requirement. *See* Fed R. Civ. P. 20(a)(1). The motor vehicle accidents involved different drivers on different dates and at different locations, and the alleged circumstances surrounding each accident are drastically different. Doc. 4-1 at ¶¶59-69.

While allegations of pattern discrimination can potentially satisfy the transaction or occurrence requirement, the pleadings do not sufficiently show any such pattern, and irrespectively, do not plausibly allege any intentional discrimination directed against either Jackson, Wiley, or Henderson, themselves. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010); *Lopez v. Donahoe*, No. 1:11-189, 2012 U.S. Dist. LEXIS 195551, at *6 (S.D. Tex. 2012) (severance granted where allegations specific to each plaintiff did not

support alleged pattern of discrimination and the association between the plaintiffs' claims were tenuous; the facts regarding the disciplinary actions and harms alleged in each claim were unique and inflicted by different supervisors).

Plaintiffs assert an HPD policy, custom, or habit of racial profiling Black suspects and targeting Black neighborhoods for initiating dangerous vehicular pursuits based on vague statistics that actually refute any alleged discrimination without any specific facts or incidents.[2] They claim HPD "shields" White neighborhoods without identifying a single similarly situated individual of a different race who was treated differently. Plaintiffs incorporate training into their pleadings that disproves their allegation that HPD trains officers to racially profile for vehicular pursuits. [Doc. 4-1 at 77-87.] The dubiousness of the alleged discrimination notwithstanding, Plaintiffs do not contend that Wiley, Henderson, or Jackson, were discriminated against by HPD or any of its officers. They do not contend Wiley, Henderson, or Jackson, were targeted or profiled based on their race. They do not contend Wiley, Henderson, or Jackson, were involved in vehicular pursuits or traffic stops by HPD officers. Plaintiffs do not even demonstrate that Wiley, Henderson, or Jackson, were injured or killed in neighborhoods supposedly targeted or chosen by HPD. Moreover, Plaintiffs have not identified any similar incidents to sustain either a pattern or practice or establish deliberate indifference on the part of any final policymaker for the City.

The improper joinder will greatly prejudice the Defendant by allowing Plaintiffs to bootstrap themselves into a tenuously alleged "pattern" of racial discrimination or profiling of third

---

[2] Plaintiffs admit that HPD received **654 officer complaints in just one year, 2021,** but **only 47 racial profiling complaints since 2010**, strongly suggesting that neither HPD nor its officers have a policy or custom of racial profiling. Doc. 4-1 at ¶8.

The pleadings rely on HPD Annual Racial Profiling Reports which show that the race or ethnicity of the suspects were known in advance of just **2.4% of the 203,671 traffic stops conducted by HPD in 2021**, and just **2.1% of the 217,288 traffic stops conducted by HPD in 2020**. Doc. 4-1 at ¶8 citing HPD Annual Racial Profiling Reports, available for 2021 at: http://www.houstontx.gov/police/department_reports/racial_profiling/2021_Annual_Racial_Profiling_022522.pdf; and for 2020 at: https://www.houstontx.gov/police/department_reports/racial_profiling/2020_Annual_Racial_Profiling_022421.pdf.

parties which they nonetheless lack standing to pursue. *See Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 131 (2011) (the fundamental requirement is that each plaintiff have standing to sue each defendant). Plaintiffs should not be encouraged to circumvent the pleading requirements by combining unrelated allegations to disguise what are clearly state law actions sounding in tort that, in the case of Henderson and Wiley, should be directed at the non-City drivers that struck them, or to invent a pattern of discrimination wholly disconnected from any alleged injury personal to the Plaintiffs. *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002).[3]

There are no cases considering severance of claims by different plaintiffs for different car accidents because no one has ever had the audacity or motivation to attempt such a joinder. However, courts have severed improperly joined claims by one plaintiff against defendants with whom she had been in three separate car accidents, despite allegations that each accident aggravated injuries from the previous accident. *Laborde v. American National Property & Casualty Companies*, No. 00-01091, 780 So.2d 501 (La. App. 3 Cir. 1/31/01). Courts have severed improperly joined claims by a driver against both her father and an insurer stemming from the same car accident. *Westley v. Progressive Specialty Ins. Co.*, No. 14-1410, 2014 U.S. Dist. LEXIS 126466 (E.D. La. 2014). Plaintiffs alleging a pattern of racial discrimination against the same employer are severed despite significant similarities in their allegations. *Lopez v. Donahoe*, LEXIS 195551, at *6. Finally, defendants have been dismissed as improperly joined when they had no involvement in the operation of the vehicle that struck the plaintiff's vehicle and had no

---

[3] "The 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). It is not enough that the defendant may have violated a legal duty owed to some other person; the plaintiffs must show that the defendant violated a legal duty owed to them. "What courts require . . . is that the injury be personal." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 295 (5th Cir. 2001).

employment relationship with the operator of the vehicle that struck the plaintiff's vehicle. *Ochoa v. P.A.M. Transp., Inc.*, Civil Action No. SA-17-CV-787-XR, 2018 U.S. Dist. LEXIS 228909 (W.D. Tex. 2018) (dismissed for improper joinder the defendants who had no connection to the driver or the ownership or operation of the truck he was driving at the time of the accident). The Court should sever the claims related to Jackson, Wiley, and Henderson into three separate actions. The City should be dismissed from the Wiley and Henderson actions because the pleadings admit that the City did not own or operate the vehicles or employ the drivers operating the vehicles that struck Wiley or Henderson.

## CONCLUSION AND PRAYER

Defendant City of Houston respectfully prays that the Honorable Court grant this motion and (1) sever the Plaintiffs' claims into three separate actions under terms the Court deems just and appropriate, and (2) dismiss the City from the actions related to the alleged injuries and deaths of Carl Wiley, Jr., and Rashad Henderson; and grant all further relief to which the City may be justly entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**
KELLY A. DEMPSEY
Chief, Torts & Civil Rights Section

Date: January 27, 2023.     By:   */s/ Melissa Azadeh*
Melissa Azadeh
State Bar No. 24064851
Telephone (832) 393-6270
Facsimile (832) 393-6259
Melissa.Azadeh@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 3rd Floor
Houston, Texas 77002
**ATTORNEYS FOR DEFENDANT**
**CITY OF HOUSTON**

## CERTIFICATE OF SERVICE

I certify that on January 27, 2023, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document, and any attachments, were delivered to all opposing counsel(s) by electronic filing of same in accordance with the District's ECF service rules, and alternatively via e-mail and/or facsimile transmission, to:

Michael Patrick Doyle
Patrick M. Dennis
Jeffrey L. Avery
Emma r. Brockway
Doyle Dennis LLP
3401 Allen Parkway, Suite 100
Houston, Texas 77019
service@doylelawfirm.com

Reginald E. McKamie, Sr.
Law Office of Reginald E. McKamie, Sr.
2120 Welch St.
Houston, Texas 77019
mckamie@mckamie.com

*/s/ Melissa Azadeh*
Melissa Azadeh

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 24, 2023, I conferred by email with opposing counsels of record Mr. Mike Doyle and Ms. Emma Beckworth, who stated that Plaintiffs oppose Defendant's motion to sever.

*/s/ Melissa Azadeh*
Melissa Azadeh