## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JANICE JACKSON, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HER LATE HUSBAND MICHAEL WAYNE JACKSON; ARLENE GALLIEN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF CARL WILEY JR.; CAMILA SIMPSON AS NEXT FRIEND OF XXXXXXX XXXXX, GYNELL HENDERSON, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF RASHAD HENDERSON, AND JOHN HENDERSON JR., INDIVIDUALLY, *Plaintiffs*, V. CITY OF HOUSTON, *Defendant*. | CIVIL ACTION NO. 4:23-cv-00052 |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO SEVER

Plaintiffs, Janice Jackson, individually and as representative of the estate of her late husband Michael Wayne Jackson; Arlene Gallien, individually and as representative of the estate of Carl Wiley Jr.; Camila Simpson as Next Friend of Xxxxxxx Xxxxx, Gynell Henderson, individually and as representative of the estate Rashad Henderson, and John Henderson Jr., Individually, file this response to the City of Houston's motion to sever.

i

## **TABLE OF CONTENTS**

Table of Contents......................................................................................................ii

Index of Authorities.................................................................................................iii

I.      Summary of the Argument..........................................................................1

II.     Factual Background ....................................................................................2

III.    Standard of Review ....................................................................................6

IV.     The City's motion to sever should be denied because (1) Plaintiffs claims
        arise out of the same transaction, occurrence, or series of transactions or
        occurrences and (2) share common question of law and fact......................8

V.      Conclusion ..............................................................................................15

Certificate of Service...............................................................................................17

# <u>INDEX OF AUTHORITIES</u>

## <u>Cases</u>

*Acevedo v. Allsup's Convenience Stores, Inc.*,
　　600 F.3d 516 (5th Cir. 2010) .......................................................................... 7

*Anderson v. Red River Waterway Comm'n*,
　　231 F.3d 211 (5th Cir. 2000) .......................................................................... 7

*Battison v. City of Electra*,
　　7:01-CV-037-R, 2001 U.S. Dist. LEXIS 6173
　　　(N.D. Tex. May 8, 2001) .......................................................... 1, 2, 10, 11, 14

*Carter v. Diamond URS Huntsville*, LLC,
　　175 F. Supp. 3d 711 (S.D. Tex. 2016) .....................................1, 7, 9, 10, 11, 14

*In re Rolls Royce Corp.*,
　　775 F.3d 671 (5th Cir. 2014) .......................................................................... 7

*Knight v. City of Sacramento Police Dep't.*,
　　No. 2:12-CV-0346 JAM-KJN, 2014 U.S. Dist. LEXIS 65235
　　　(E.D. Cal. May 12, 2014) ................................................................. 1, 2, 11. 14

*Lodsys, LLC v. Brother Intern. Corp.*,
　　No. 2:11-cv-90-JRG, 2012 U.S. Dist. LEXIS 31456 (E.D. Tex. Mar. 8, 2012)
　　....................................................................................................................... 7

*Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*,
　　No. 3:11-CV-2205-D, 2012 U.S. Dist. LEXIS 138217, 2012 WL 4442368
　　　(N.D. Sept. 26, 2012) ............................................................................... 7, 8

*Thompson v. Capstone Logistics, LLC*,
　　Civil Action no. 4:15-CV-2464, 2018 U.S. Dist. LEXIS 12076 (S.D. Tex. Jan.
　　　25, 2018)................................................................................................ 7, 8

*United States v. O'Neil*,
　　709 F.2d 361 (5th Cir. 1983) .......................................................................... 7

# I.
## Summary of the Argument

In requesting that the Court sever this lawsuit, the City of Houston alternates between challenging the merits of Plaintiffs' claims and attacking Plaintiffs – the families of innocent bystanders killed during HPD's racially-targeted pursuits. As opposed to directing the Court to federal cases that have addressed similar arguments in Section 1983 pattern and practice cases, the City simply reverts to name-calling. By example, the City has accused the families of having the "audacity" to file a civil rights lawsuit based on HPD's systemic racial profiling (and approval of that profiling) as part of its officer's decision to engage (or participate) in a pursuit and/or high-speed driving. Stripped of its vitriol to its victims, the City has failed to provide any argument that supports severance.

In contrast, the Southern District of Texas in *Carter v. Diamond URS Huntsville*, LLC,[1] the Northern District of Texas in *Battison v. City of Electra*, [2] and the Eastern District of California in *Knight v. City of Sacramento Police Dep't.*[3] have all addressed and rejected the exact argument raised in Defendant's motion. Put bluntly, Plaintiffs have alleged that HPD "engaged in a pattern or practice of violating the constitutional rights of its citizens "through its custom, training, lack of discipline, and supervision . . . that authorizes and encourages officers to profile

---

[1] 175 F. Supp. 3d 711 (S.D. Tex. 2016).
[2] 7:01-CV-037-R, 2001 U.S. Dist. LEXIS 6173 (N.D. Tex. May 8, 2001).
[3] No. 2:12-CV-0346 JAM-KJN, 2014 U.S. Dist. LEXIS 65235 (E.D. Cal. May 12, 2014).

1

Black drivers."[4] The court in *Battison* made it clear – "this allegation alone suffices to meet Rule 20(a)'s common transaction or occurrence requirement."[5] Furthermore, as explained in *Knight*, severance should be denied where Plaintiffs' "*Monell* claim[s] arise[] out of the same 'series of transactions or occurrences' — namely, the City's alleged failure to address the pattern of misconduct."[6] And here, Plaintiffs have alleged that HPD racially profiled drivers and neighborhoods as part of the officer's decision to engage (or participate) in a pursuit and/or high-speed driving,[7] (2) this conduct was authorized as a policy, custom, or usage based on HPD's pattern of approval (and lack of discipline) for the conduct;[8] and (3) the violations were the moving force in the deaths of Henderson, Jackson, and Wiley.

For all these reasons, Plaintiffs request that the Court deny the motion to sever.

## II.
## Factual Background

This lawsuit is brought by innocent bystanders Michael Wayne Jackson, Carl Lee Wiley Jr., and Rashad Henderson – three Black men who were killed based on HPD's racially motivated and unconstitutional targeting of black drivers and

---

[4] *Compare Battison*, 7:01-CV-037-R, 2001 U.S. Dist. LEXIS 6173 at *6 ("Here, the Plaintiffs allege that the City of Electra has engaged in a pattern or practice of violating the constitutional rights of its citizens by engaging in negligent hiring, supervision, and retention.") with Exhibit 1, Complaint at pg. 18 ("HPD, through its custom, training, lack of discipline, and supervision, has created a pattern, practice, custom, or usage that authorizes and encourages officers to profile Black drivers, when evaluating whether to initiate a high-speed pursuit.")

[5] *Battison*, 7:01-CV-037-R, 2001 U.S. Dist. LEXIS 6173 at *6.

[6] *Knight*, No. 2:12-CV-0346 JAM-KJN, 2014 U.S. Dist. LEXIS 65235 at *5-6.

[7] Complaint at Pg. 66 (for Jackson); *id*. at pg. 71 (for Henderson); *id*. at 60 (for Wiley).

[8] *See e.g.* Exhibit 1, Complaint at Pgs. 14-18; 31-35.

neighborhoods.[9] For years, the policymakers within City of Houston adopted a custom, practice, pattern, and usage of authorizing police officers to profile Black drivers and racially target predominantly Black neighborhoods when deciding whether to engage or participate in high-speed pursuits.[10] Ultimately, this policy, custom, practice, and usage was the moving force that caused the death of Jackson, Wiley, and Henderson.

In particular, the City of Houston has "train[ed] its officers when evaluating whether to engage in a high-speed chase, to consider the neighborhood – implicitly, including the racial demographics of the neighborhood – and social image – implicitly, including the race of the drivers."[11] HPD Further has "train[ed], supervise[d], and fail[ed] to discipline its officers consistent with a pattern of approving racially motivated, dangerous high-speed pursuits.[12] Through this conduct, HPD has created a custom, pattern, and practice of targeting Black drivers and predominantly Black neighborhoods when engaging or deciding to participate in dangerous high-speed chases.[13] HPD has a policy to "encourage[] its officers to racially profile by (1) failing to ever take disciplinary action against officers for allegations of racial profiling, (2) establishing a disciplinary process that encourages profiling, and (3) limiting any meaningful review of allegations of

---

[9] Exhibit 1, Complaint at pg. 2.
[10] Id.
[11] Id. at pg. 14-15.
[12] Plaintiff's Complaint at pg. 14.
[13] Id. at pg. 15.

racial profiling."[14] Indeed, "HPD, through its Chief of Police, has established inadequate policies and customs of investigating, punishing, supervising, and disciplining police officers who racially profile either drivers or neighborhoods."[15] And "HPD's policy of authorizing racial profiling in high-speed chases has become a persistent and widespread practice of the city and its employees and thus constitutes a custom that represents the City of Houston's policy."[16]

HPD's pattern of profiling is particularly made clear by the statistically significant differences between chases of Black drivers during the date and during the night.[17] Specifically, during the day in 2020 – when HPD officers are more likely to be able to identify a driver's race prior to a pursuit – high-speed pursuits of Black drivers made up 65.01% of HPD's chases.[18] But at night in 2020 – only after visibility and identification of the race of the driver is limited – HPD's chases of Black drivers dropped to 52.07%.[19] This difference was more than three times the standard deviation. The difference between the day and night chases – sometimes referred to as the "veil of darkness" – reveals HPD's racial profiling practice.[20]

---

[14] Plaintiff's Complaint at pg. 31.
[15] *Id.* at 31
[16] *Id.* at 31.
[17] *Id.* at 16-18.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 18.

Sadly, HPD's racial profiling and racial targeting was the moving force of the deaths of Henderson, Wiley, and Jackson.  In more detail on December 4, 2021, an HPD officer decided to join an on-going pursuit of 4 to 5 Black suspects in the predominantly Black neighborhood of Sunnyside.[21] After the initial chase in pursuit of the suspects had ended, the HPD officers continued to recklessly drive – in effect creating their own pursuit – even though he suspects had fled their car, nearly a mile away.[22]  The officers made this decision based on racial profiling of the neighborhood and suspect. Ultimately, the officer violently swerved at the intersection of Scott and Reed.[23] As the officer veered the SUV onto the sidewalk, the vehicle struck and killed Mr. Jackson, who was walking on the sidewalk to his barber.[24]

On February 7, 2022, HPD patrol officers were patrolling near 10400 Richmond Avenue, Houston, Texas – an area in the predominantly Black neighborhood of Westchase.[25]  HPD spotted and targeted a Black man at a gas station, who had, an alleged open container. HPD then initiated a chase of the driver based on his race (Black) and the neighborhood based on its racial

---

[21] *Id.* at 37-40.
[22] *Id.*
[23] *Id.*
[24] *Id*.
[25] *Id.* at 35-37.

demographics (majority Black).[26]   Because of HPD's profiling and chase, the suspect slammed his car into Carl Wiley Jr. and killed him.[27]

Similarly, on December 17, 2020, HPD officers targeted a Black female teenager and chased her at unsafe speeds.[28] "During the unsafe chase, the teenager drove hazardously while also speeding at approximately 100 miles per hour."[29] HPD made the decision to initiate the chase and engage the driver based on its racial profiling of her, while "knowing that the risk to the public was substantial and there was high likelihood of a vehicle crash and potential injury."[30] Because of HPD's profiling and chase, the suspect slammed her car Rashad Henderson and killed him.[31]

Plaintiffs filed their claims together in Harris County District Court. Defendant removed this lawsuit.  While the City filed an answer to the initial complaint by the Jackson Plaintiffs, to date, the City has not answered Henderson or Wiley's complaint and ignored Rule 81(c).  The City has now moved to sever the claims of Wiley, Jackson, and Henderson.

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at 40-42.
[29] *Id.*
[30] *Id.*
[31] *Id.*

## III.
## Standard of Review

This Court has broad discretion to sever claims and parties in a lawsuit.[32] While Defendant's motion requests dismissal of the lawsuit, "severance under Rule 21 creates two separate actions or suits where previously there was but one."[33] In evaluating a motion to sever, courts utilize Rule 20(a) "to determine if the parties have been misjoined and should therefore be severed."[34] Under Rule 20(a), parties may "join in one action as plaintiffs if (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."[35]

The Fifth Circuit "has not adopted a particular test to decide what is 'the same transaction or occurrence' under Rule 20(a)."[36] But "in *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014), the Fifth Circuit acknowledged that while it has not yet adopted a test for severance," many district courts have applies a five factor test.[37] These factors are:

---

[32] *Anderson v. Red River Waterway Comm'n,* 231 F.3d 211, 214 (5th Cir. 2000).

[33] *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983).

[34] *Thompson v. Capstone Logistics, LLC*, Civil Action no. 4:15-CV-2464, 2018 U.S. Dist. LEXIS 12076 (S.D. Tex. Jan. 25, 2018)(citing *Acevedo v. Allsup's Convenience Stores, Inc*., 600 F.3d 516, 521 (5th Cir. 2010)).

[35] *Id*. at *16 (citing *Lodsys, LLC v. Brother Intern. Corp.*, No. 2:11-cv-90-JRG, 2012 U.S. Dist. LEXIS 31456 (E.D. Tex. Mar. 8, 2012)).

[36] *Carter*, 175 F. Supp. 3d at727 (citing *Lodsys, LLC*, No. 2:11-cv-90-JRG, 2012 U.S. Dist. LEXIS 31456).

[37] *Id.* at *16 (citing *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co*., No. 3:11-CV-2205-D, 2012 U.S. Dist. LEXIS 138217, 2012 WL 4442368, at *1 (N.D. Sept. 26, 2012)).

7

(1) "whether the claims arise out of the same transaction or occurrence;

(2) whether the claims present some common questions of law or fact;

(3) whether settlement of the claims or judicial economy would be facilitated;

(4) whether prejudice would be avoided if severance were granted; and

(5) whether different witnesses and documentary proof are required for the separate claims."[38]

Generally, "severance will be refused if the court believes that it only will result in delay, inconvenience, or added expense.'" Id., quoting Wright & Miller, Fed. Prac. & Proc. § 1689 (3d ed. 2004). However, the "impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."[39]

## IV.
## The City's motion to sever should be denied because (1) Plaintiffs claims arise out of the same transaction, occurrence, or series of transactions or occurrences and (2) share common question of law and fact.

The City of Houston's motion largely rests on its argument that the deaths of Henderson, Jackson, and Wiley did not "arise out of the 'same transaction, occurrence, or series of transactions or occurrences." Defendant is wrong.  Each of the Plaintiff's claims arise from the policy created by the City of Houston, including both the custom and the City's authorization of that custom by its failure to

---

[38] *Id.*
[39] *Id.* (citing *Acevedo*, 600 F.3d at 521).

discipline its officers. Defendant instead side-steps the allegations and claims entirely.  Because this pattern and authorization is an essential element to Plaintiffs' claims, Plaintiffs are properly joined in this lawsuit.

The Southern District of Texas addressed and rejected a similar argument in *Carter v. Diamond URS Huntsville*, LLC, 175 F. Supp. 3d 711 (S.D. Tex. 2016).  In that case, the plaintiffs alleged violations of excessive force and unreasonable searches against the City of Huntsville and two police officers.[40] The conduct at issue occurred at separate times to separate plaintiffs. In their federal lawsuit, the plaintiffs "joined claims against the two officers and the City of Huntsville in part to meet (1) the requirement of a policy or custom to impose liability on the City under § 1983; (2) the requirement that policy makers actually or constructively knew of the unconstitutional deficiencies in those policies or customs, which were highly predictable; and (3) the requirement that the customs or policies were the moving force behind the constitutional violation of Plaintiffs' rights and adopted with deliberate indifference to the rights of the citizens."[41] The Defendant moved to sever the claims.

In rejecting the motion, Judge Harmon found that the "joinder of the claims against the two officers is relevant to the common legal question of a custom or policy for imposition of liability on the City of Huntsville for the alleged

---

[40] *Carter*, 175 F. Supp. 3d 711.
[41] *Id*. at 725.

unconstitutional violations of Plaintiffs' rights."[42] And the "joinder of these parties and claims therefore does not prolong the litigation nor unnecessarily increase its costs."[43] The Court also noted that "[t]he second prong of Rule 20(a) is met because both [the] [p]laintiffs allege the same constitutional violation of false arrest."[44] Thus, the Court found that the "claims should not be severed."[45]

In addition, in *Battison v. City of Electra*, the Northern District of Texas addressed severance in a Section 1983 case involving *Monell* liability.[46] Just like *Carter*, the plaintiffs in *Battison* also "allege[d] that the City of Electra has engaged in a pattern or practice of violating the constitutional rights of its citizens by engaging in negligent hiring, supervision, and retention."[47] In response to the motion to sever, the Court made it clear –"this allegation alone suffices to meet Rule 20(a)'s common transaction or occurrence requirement."[48] The Court, however, further explained that the "individual incidents described by the Plaintiffs are not as discrete as the Defendants claim."[49] Rather, "[e]ach individual officer named in the suit participated in more than one of the alleged incidents, and the behavior described on the part of these officers had common

---

[42] *Id*. at 730.
[43] *Id*.
[44] *Id*.
[45] *Id.*
[46] 7:01-CV-037-R, 2001 U.S. Dist. LEXIS 6173 (N.D. Tex. May 8, 2001).
[47] *Id*. at *2.
[48] *Id*. at *6.
[49] *Id*.

characteristics," and occurred "within a six month period."[50] Furthermore, the second element was met because "[a]ll five Plaintiffs allege the same constitutional violations, therefore there are common questions of law present."[51] Therefore, the Court denied the motion to sever.

Echoing *Battison* and *Carter*, the Eastern District of California also rejected a similar severance argument in *Knight v. City of Sacramento Police Dep't*.[52] In that case, the plaintiffs included "nine individuals who were bitten by K-9 units in Defendant City of Sacramento's police force."[53] "Each individual Plaintiff was bitten on a separate occasion." In rejecting the defendants' motion to sever, the Court noted that the plaintiffs "assert[ed] a § 1983 *Monell* claim against Defendant City of Sacramento for deliberate indifference."[54] And "each Plaintiff's right to relief under the *Monell* claim arises out of the same 'series of transactions or occurrences' — namely, the City's alleged failure to address the pattern of misconduct by K-9 handlers."[55] The Court further clarified that the "first prong of Rule 20(a)(1) does not require that all claims in the complaint arise from the same series of transactions or occurrences; rather it only requires that any claim for

---

[50] *Id*.
[51] *Id*.
[52] No. 2:12-CV-0346 JAM-KJN, 2014 U.S. Dist. LEXIS 65235.
[53] *Id*. at *1-2.
[54] *Id*. at *5.
[55] *Id*. at *5-6.

relief, common to all Plaintiffs, arises from the same series of transactions and occurrences."[56] Based on that, the Court denied the motion.

Here, like *Carter, Battison,* and *Knight*, Plaintiffs have met the first element of Rule 20(a) because they have all asserted *Monell* claims based on the City's alleged failure to address the pattern of misconduct by its officers. More specifically, Plaintiffs have asserted that HPD maintained a policy to "racially profile drivers and neighborhoods when engaging (or deciding not to engage)" high-speed chases or high-speed driving.[57] This pattern, practice, custom, or usage includes the following:

- HPD trains, supervises, and fails to discipline its officers consistent with a pattern of approving racially motivated, dangerous high-speed pursuits;[58]

- "HPD trains its officers when evaluating whether to engage in a high-speed chase, to consider the neighborhood — implicitly, including the racial demographics of the neighborhood — and social image — implicitly, including the race of the drivers."[59]

- HPD has created a custom, pattern, and practice of targeting Black drivers and predominantly Black neighborhoods when engaging in dangerous high-speed chases.[60]

- HPD, through its custom, training, lack of discipline, and supervision, has created a pattern, practice, custom, or usage that authorizes and encourages officers to profile Black drivers, when evaluating whether to initiate a high-speed pursuit.[61]

- HPD has a policy to "encourage[] its officers to racially profile by (1) failing to ever take disciplinary action against officers for allegations of racial

---

[56] *Id*. at *6.
[57] Plaintiff's Complaint at pg. 44
[58] *Id*. 14.
[59] *Id*. at pg. 14-15.
[60] *Id*. at pg. 15.
[61] *Id*. at pg. 18.

profiling, (2) establishing a disciplinary process that encourages profiling, and (3) limiting any meaningful review of allegations of racial profiling";[62]

- "[T]he City also has created a pattern, practice, custom, or usage to target Black neighborhoods, as opposed to predominantly white or Hispanic neighborhoods."[63] This includes "authoriz[ing[ and encourage[ing] officers to profile Black neighborhoods when evaluating whether to initiate a high-speed pursuit."[64]

- "HPD, through its Chief of Police, has established inadequate policies and customs of investigating, punishing, supervising, and disciplining police officers who racially profile either drivers or neighborhoods." And "HPD's policy of authorizing racial profiling in high-speed chases has become a persistent and widespread practice of the city and its employees and thus constitutes a custom that represents the City of Houston's policy."[65]

- HPD's policy was the "moving force" of the death of Jackson, Wiley, and Henderson;[66]

Defendant attempts to isolate some of the differences between the deaths of Henderson, Jackson, and Wiley. Yet each of these claims include allegations based on the same pattern, usage, or policy that (1) HPD racially profiles drivers as part of the officer's decision to engage (or participate) in a pursuit; (2) HPD profiles the neighborhood as part of the officer's decision to engage (or participate) in a pursuit; and (3) this conduct is the moving force of the death of Jackson, Wiley, and Henderson. Furthermore, each claim directly arises from the officers to decision to engage Black suspects prior to the pursuit – or in the case of Jackson,

---

[62] *Id*. at pg. 31.
[63] *Id*. at pg. 18.
[64] *Id*. at 30.
[65] *Id*. at 31.
[66] *Id*. at 43; 46; 49; 50.

immediately after the vehicle pursuit[67] – based on racial profiling and targeting of the suspects or neighborhoods. As a result, Plaintiffs claims all arise under the same alleged policy, the same pattern of conduct, the same approval by HPD, and the same causation standard. Furthermore, Plaintiffs deaths all occurred within 15-months of each other. Because this is exactly like *Carter, Battison,* and *Knight*, Defendant's motion should be denied.

Defendant instead cites to *Lopez v. Donahoe*[68] – a Title VII claim regarding several employment terminations.  Notably, Title VII, unlike 1983, has vicarious liability, and does not require a showing under *Monell* of a pattern of conduct that has the force of law. Regardless, in *Lopez*, the plaintiffs only argued that the defendant's "'racist agenda and his retaliatory mind set' resulted in a pattern of discrimination."[69] The court found that "allegations specific to each Plaintiff do not support that contention" because only one of the plaintiffs "actually allege[d] a discriminatory interaction with [the defendant]."[70]

---

[67] Jackson's claim involves officers who initiated reckless driving during a pursuit and continued to drive recklessly based on racial profiling of the suspects and neighborhood. Prior to the crash, the primary drivers had already flagged that the chase involved four to five Black suspects. And "[a]s a result, Hernandez knew that he was pursing Black suspects and in a predominantly Black neighborhood." "As Hernandez dangerously and intentionally approached Scott Street at a speed double the legal limit, Hernandez violently swerved at the intersection and veered the car onto the sidewalk. Hernandez then struck and killed Mr. Jackson, who was walking on the sidewalk to his barber." "Hernandez and his partner intentionally decided to profile the neighborhood and suspect, knowing that the risk to the public was substantial and there was high likelihood of a vehicle crash and potential injury."  Complaint at 61-65.

[68] Civil Action no. 1:11-189, 2012 U.S. Dist. LEXIS 195551 (S.D. Tex. Mar. 12. 2012).

[69] *Id.* at *6.

[70] *Id.* at *6-7.

In contrast, to *Lopez*, the families in this case have each alleged that Henderson, Jackson, and Wiley died because (1) HPD racially profiled drivers and neighborhoods as part of the officer's decision to engage (or participate) in a pursuit and/or high-speed driving,[71] (2) this conduct was authorized as a policy, custom, or usage based on HPD's pattern of approval (and lack of discipline) for the conduct;[72] and (3) the violations were the moving force in their death.[73] This is the exact type of case where joinder is not only important, but necessary to meet the legal showing under *Monell*.  Put simply, Defendant's motion applies inapplicable law regarding inapplicable causes of action.  As a result, it should be denied.

## IV.
## CONCLUSION

Because Plaintiffs' claims are properly joined, Plaintiff requests that the Court deny Defendant's motion to sever.

Respectfully submitted,

**DOYLE DENNIS LLP**

_____
MICHAEL PATRICK DOYLE
State Bar No. 06095650
PATRICK M. DENNIS
State Bar No. 24045777
JEFFREY I. AVERY
State Bar No. 24085185

---

[71] Exhibit 1, Complaint at Pg. 66 (for Jackson); *id*. at pg. 71 (for Henderson); *id*. at 60 (for Wiley).
[72] *Id.* at Pgs. 14-18; 31-35.
[73] *Id*. at 31.

15

3401 Allen Parkway, Suite 100
Houston, Texas 77019
Phone: 713.571.1146
Fax:  713.571.1148
service@doylelawfirm.com
**ATTORNEYS FOR PLAINTIFFS**

Reginald E. McKamie, Sr.
Law Office Reginald E. McKamie, Sr.
PC
2120 Welch St.
Houston, TX 77019
mckamie@mckamie.com
**CO-COUNSEL FOR PLAINTIFF CAMILLA SIMPSON, AS NEXT FRIEND OF XXXXXXX XXXXX AND ARLENE GALLIEN**

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to counsel of record on this the 20th day of February, 2023, via ECF, hand delivery, overnight courier, U.S. Mail, certified mail, return receipt request, or facsimile, pursuant to the Federal Rules of Civil Procedure:

Melissa Azadeh
City of Houston Legal Department
P.O. Box 368
Houston, TX 77002-0368
Phone: (832) 393-6491
Fax: (832) 393-6259
Email: melissa.azadeh@houstontx.gov
**ATTORNEY FOR DEFENDANT**


_____
Michael Patrick Doyle