**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JANICE JACKSON, INDIVIDUALLY,** | § | |
| **AND AS REPRESENTATIVE OF THE** | § | |
| **ESTATE OF HER LATE HUSBAND,** | § | |
| **MICHAEL WAYNE JACKSON; ARLENE** | § | |
| **GALLIEN, INDIVIDUALLY AND AS** | § | |
| **REPRESENTATIVE OF THE ESTATE OF** | § | |
| **CARL WILEY JR.; CAMILA SIMPSON** | § | |
| **AS NEXT FRIEND OF XXXXXXX** | § | **CIVIL ACTION NO. 4:23-CV-00052** |
| **XXXXX, GYNELL HENDERSON,** | § | |
| **INDIVIDUALLY AND AS** | § | |
| **REPRESENTATIVE OF THE ESTATE OF** | § | |
| **RASHAD HENDERSON; AND JOHN** | § | |
| **HENDERSON JR., INDIVIDUALLY,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **V.** | § | |
| | § | |
| **THE CITY OF HOUSTON,** | § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT CITY OF HOUSTON'S REPLY IN SUPPORT OF MOTION TO SEVER AND PARTIALLY DISMISS FOR IMPROPER JOINDER

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant City of Houston ("Defendant" or "City") files this Reply to Plaintiffs' Response (Doc. 6) to the City's Opposed Motion to Sever Plaintiffs' improperly joined claims into three separate actions and Dismiss the City from the actions related to alleged injuries and deaths of Carl Wiley, Jr., and Rashad Henderson (Doc. 5), respectfully showing the following:

1.     **None of Plaintiffs' cited cases addressed the City's arguments or approved the Joinder of Unrelated and Dissimilar claims like those joined by Plaintiffs**

Plaintiffs' response relies on mischaracterizations of three cases which the Plaintiffs claim, "*all addressed and rejected the exact argument raised in Defendant's motion*." (Doc. 6 at 4.) None of those cases addressed the City's arguments for severance or approved of joinder of

plaintiffs and claims as unrelated and factually dissimilar as those joined in this case.  None denied severance of three separate sets of plaintiffs and incidents factually dissimilar from each other and causally disconnected from the purported City pattern or practice.  The cases will be addressed in turn.

> ### a.    *Carter v. Diamond URS*, 175 F. Supp. 3d 711 (S.D. Tex. 2016)

Plaintiffs suggest that severance was denied in *Carter v. Diamond URS Huntsville* because unrelated claims and parties can be joined when alleging a pattern or practice against a municipality, but in *Carter*, the court dismissed the claims against the City of Huntsville in the same order denying the two defendant-Officers' motion to sever.[1]  It was the individual claims that were properly joined against two defendant-officers alleged to have jointly planned and carried out a conspiracy against both plaintiffs for personal reasons.  The City of Huntsville had not moved for severance.  *Id.* at 728.

*Carter* involved claims against Officer Stacey Smith, Officer Christopher Myers, and the dismissed the City of Huntsville.  *Id.* at 726.  The defendant-Officers moved to sever what they characterized as claims that Officer Myers used excessive force while arresting two unrelated plaintiffs—Melisa Carter and Chris Smith—in two unrelated incidents.   *Id.* at 728.  Defendant-Officer Stacey Smith was married to plaintiff Chris Smith (also a police officer).  *Id.*  The Officers *claimed* Officer Stacey Smith had no involvement in the arrest of her estranged husband or Melisa Carter, but that was not what the pleadings alleged.  *Id.*

Melisa Carter and Chris Smith had been arrested within a week of each other by Officer Myers.   *Id.* at 729.  The complaint described in detail the alleged violence with which Myers treated plaintiff Carter in stopping her and arresting her in her own apartment, purportedly without

---

[1] *Carter*, 175 F. Supp. 3d at 753-54 ("The Court finds that Plaintiffs have failed to plead such a custom or practice. At most the complaint asserts three isolated incidents, each of which is different from the others.").

probable cause.  *Id.* at 729-30.  Also detailed was Myers' intimidation in his unlawful stop and arrest of plaintiff Chris Smith after he had already been questioned and released by other officers following an automobile accident.  *Id.* at 729-30.

The plaintiffs alleged Officer Stacey Smith "conspired with Myers and participated in an action with him to 'get' Plaintiffs Chris Smith and Carter."  *Id.* at 730.  Defendant-Officer Stacey Smith was in the midst of a bitter divorce from plaintiff Chris Smith and allegedly attempting to gain an advantage in their divorce and child custody litigation.  *Id.* at 728.

Officer Myer had a long history and pattern of abusing his office and power and was removed from the police force for excessive force and abuse of a detainee.  *Id.* at 743.  Officer Stacey Smith was a close friend of Officer Myers and supported Myers despite his known history of misconduct.  *Id.*

The defendant-Officers allegedly discussed and plotted with other officers, who had warned Chris Smith that "Stacey, Myers and her crew are gunning for you."  *Id.* at 743.  "Stacey Smith purportedly threatened Chris Smith that she would use her position as a police officer against him."  *Id.*  Officer Stacey Smith had a personal vendetta against plaintiff Carter as well, who lived in the same apartments and had offended Officer Stacey Smith.  *Id.* at 743-744.

So, *Carter* did not address the joinder of plaintiffs and claims comparable to the case at hand.  The *Carter* plaintiffs pled detailed facts establishing that two defendant-Officers conspired and participated together in targeted civil rights violations against both plaintiffs, for personal reasons.  The alleged policy, pattern or practice against the City was dismissed and irrelevant to the denial of severance.

      b.    ***Battison v. City of Electra*, 7:01-CV-037-R, 2001 U.S. Dist. LEXIS 6173 (N.D. Tex. May 8, 2001).**

*Battison* involved alleged excessive force, searches and seizures without probable cause,

and unlawful censoring of freedom of expression by three defendant-police officers.  *Id.* at *5.  The plaintiffs also sued the city, alleging it maintained an official policy, practice, or custom of negligently hiring, supervising, and retaining members of its police force.  *Id.* at *6.

The defendants sought to sever, arguing that the claims concerned three distinct incidents occurring on three different occasions, different officers were involved in each incident, and the only thing the plaintiffs had in common was their attorney.  *Id.* at *4.

The court denied severance, noting that the individual incidents described by the plaintiffs "are not as discrete as the Defendants claim."  *Id.* at *6.  Each individual officer named in the suit participated in more than one of the alleged incidents, all three officers exhibited common behavior, and all three incidents occurred within a six-month period.  *Id.*  The common behaviors and constitutional violations by the officers were factually linked to the alleged failures of the City of Elektra.  *Id.*

*Battison* does not address claims comparable to this case either.

        c.      **Knight v. City of Sacramento Police Dep't.**, No. 2:12-CV-0346 JAM-KJN, 2014 U.S. Dist. LEXIS 65235 (E.D. Cal. May 9, 2014)

*Knight* is a California district court case applying Ninth Circuit precedent that is not binding and has little persuasive value in the Fifth Circuit.  Nevertheless, *Knight*, too, did not address arguments even remotely applicable to the City's Motion to Sever in this case.

The defendants in *Knight* filed a motion to sever less than two months before the final pretrial conference, without any explanation for the delay.  *Knight*, LEXIS 65235, at *3.  The court had entered an order severing the defendants from a previous action on February 9, 2012.  *Id.* at *2.  In accordance with that order, the plaintiffs filed their second amended complaint on March 7, 2012.  *Id.*  More than two years later, on April 2, 2014, the defendants filed a motion seeking severance of each plaintiff into nine separate cases.  *Id.*  Trial was set for June 30, 2014.  The final

pretrial conference was set for May 29, 2014.

The *Knight* plaintiffs were nine individuals who were bitten by K-9 units in the City of Sacramento's police force.  *Id.* at *2.  Each individual plaintiff was bitten on a separate occasion by one of four K-9 and officer units.  *Id.*  However, each defendant-officer was the handler of a K-9 unit that bit more than one of the plaintiffs.[2]  *Id.*  The plaintiffs asserted ten causes of action, including a *Monell* claim alleging the City's acts or omissions in training K-9 handlers constituted deliberate indifference directly causing their injuries.  *Id.* at *5.

Some of the claims arose from the same alleged transaction and occurrence and involved the same K-9 units, handlers, and their alleged training by the City.  *Id.* at *6.  Unlike this case, "each plaintiff's claim did not arise from a unique and separate transaction or occurrence."  *Id.*

### 2.    Claims stemming from three unrelated incidents, causally disconnected from the purported pattern and practice and factually dissimilar from each other, are improperly joined

A pattern or practice of conduct ***can*** constitute the "series of transactions or occurrences" required by Rule 20(a), but the pleadings must first allege such a pattern or widespread practice and establish that it caused each plaintiffs' alleged injuries, and the incidents must be similar.  *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).   Plaintiffs have not plausibly alleged a widespread pattern or practice of racially discriminatory selection of drivers and neighborhoods for high-speed pursuits by HPD officers, but even if they did, it could not have been the moving force behind any alleged violation of Jackson, Wiley, or Henderson's rights, who were neither targets of traffic stops nor vehicular pursuits by HPD officers.

Plaintiffs argue that "*for years, the policymakers within City of Houston adopted a custom,*

---

[2] Two plaintiffs were bitten by K-9 Bandit, handled by defendant-officer Dahl.  Four plaintiffs were bitten by K-9 Blitz, handled by defendant-officer Azevedo.  One plaintiff was bitten by an unidentified K-9 unit handled by defendant-officer Thompson.  Two plaintiffs were bitten by K-9 units handled by unidentified officers.  *Id.* at *2.

practice, pattern, and usage of authorizing police officers to profile Black drivers and racially target predominantly Black neighborhoods when deciding whether to engage or participate in high-speed pursuit."   (Doc. 6 at 6, citing Doc. 8-1 at 2.)   Wholly absent from the pleadings, however, are any facts to support this purported custom or widespread practice.   Not a single alleged discriminatory traffic stop or vehicular pursuit is identified.[3]  Not a single instance of HPD officers allegedly "shielding White neighborhoods" is identified.  (Doc. 5 at 6.)

Plaintiffs' statistical conclusions are contradicted by the underlying data they rely on. (Doc. 5 at 6, n.2, n.3.)  The data establishes two fatal points: first, the race of the suspect was known prior to just 2.1% or 2.4% of the hundreds of thousands of traffic stops conducted each year.  (Doc. 5 at 6, n.2, n.3.)  Second, while HPD receives over 650 officer complaints in a ***single*** year, there were only 47 racial profiling complaints in more than twelve years, since 2010.  *Id.*

Finally, Plaintiffs' take select words from various pages of PowerPoint slides to misrepresent that:

> "*as part of its training to evaluate when to initiate a high-speed chase, HPD teaches its officers to evaluate the "social image" of the chase, weigh "urban factors," and evaluate this with their "stresses, attitudes, emotions, prejudices, [and] bias*."[4]

The allegations are not supported by the training attached to the complaint.  (Doc. 4-1 at 77-88.) More importantly, Plaintiffs removed the first eleven pages of the training, which show that

---

[3] Because Plaintiffs do not identify a policy maker or an officially authorized policy, to impose liability on the City, they must allege a widespread practice that is so common and well settled as to constitute a custom that fairly represents municipal policy.  *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  The purported custom or practice must be shown to have "sufficiently numerous prior incidents," as opposed to "isolated instances" of the use of excessive force and unlawful arrest by law enforcement officials.  *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir. 2009).  Where "actions of city employees are used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the police officers' course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected and accepted practice of city employees."  *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).  Moreover, "[a] pattern requires similarity and specificity"; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."  *Peterson*, 588 F.3d at 851.

[4] Doc. 6 at 3, citing Doc 4-1 at 15-16 (citing Exhibit A – Doc. 4-1 at 77-88).

Exhibit A is not HPD training at all, but Texas Commission on Law Enforcement (TCOLE) Academy training, implemented and mandated by the State of Texas. *See* Exhibit 1.[5]  The training is from 2009 – more than 10 years before the earliest incident the subject of this lawsuit. *Id.* at 2.

Irrespectively, neither Jackson, Henderson, nor Wiley, are alleged to have been the target of a traffic stop or vehicular pursuit by any HPD officer.[6]  Neither Jackson, Henderson, nor Wiley are alleged to have been in a neighborhood where any HPD officer initiated a traffic stop or vehicular pursuit. *Id.*

Jackson was not injured by an HPD officer or vehicle.   Jackson was admittedly not the target of an HPD traffic stop, pursuit, or any other police action.   Rather, the pleadings allege officers en route to assist with a terminated pursuit elsewhere swerved to avoid traffic while speeding, veered onto a sidewalk, and struck Jackson, who was a pedestrian.  No facts are alleged to suggest the officers knew Jackson's race or selected him for a traffic stop or vehicular pursuit. (Doc. 5 at 3, citing Doc. 8-1 at ¶¶61-63.)

Henderson was not injured by an HPD officer or vehicle.   Henderson was admittedly not injured during a pursuit by HPD officers or in a neighborhood "selected" by HPD officers.  Although HPD officers had allegedly pursued the driver who ultimately killed Henderson ***earlier***, they are not alleged to have "selected" her to pursue.  Rather, the driver's mother had contacted police, reported crimes, and requested police response.  The pleadings suggest, without specifying, that the driver continued to drive recklessly and may have been pursued by law enforcement agencies in other jurisdictions when she exited Galveston Road and struck Henderson's vehicle

---

[5] Exhibit 1 contains the complete copy of the training, bates labeled COH-Sauls01357-01417, TEXAS COMMISSION ON LAW ENFORCEMENT HOUSTON POLICE ACADEMY INSTRUCTORS LESSON PLAN, Driving Safety & Pursuit Refresher.  Plaintiffs' attachment omitted pages COH-Sauls01357-01368 (Doc. 8-1 at 77-88.).

[6] See Doc. 5 at 3-4 (summarizing the complaint's allegations regarding each incident).

sometime later.  (Doc. 5 at 4, citing Doc. 8-1 at ¶¶68-69.)

Wiley was killed by a fleeing suspect who ran a red light at high speeds, striking Wiley's vehicle.  (Doc. 5 at 3-4, citing Doc. 8-1 at ¶¶58-60).  The fleeing driver, Cameron Rogers, has been charged with evading in a motor vehicle and aggravated assault causing the death of Wiley.  (Doc. 5-1.)  The pleadings do not plausibly establish that Rogers' race was known to HPD officers before they initiated a traffic stop, or that HPD officers caused Rogers to flee from them, evade at high speeds and run a red light, striking Wiley's vehicle.  The pleadings do not allege that HPD officers had any control of the driver's chosen route of evasion.  Evading arrest in a motor vehicle is a felony for which officers had probable cause to pursue and stop Rogers.  TEX. PEN. CODE §38.04.  No facts are alleged suggesting any HPD officer chasing Rogers caused Rogers to strike Wiley's vehicle, saw or chose Wiley's vehicle for Rogers to strike, or were aware of Wiley's race. (Doc. 5 at 3-4, citing Doc. 8-1 at ¶¶58-60).

Any purported pattern and widespread practice of racially discriminatory vehicular pursuits had nothing to do with the three incidents the subject of the unrelated Plaintiffs' claims.  The three incidents have nothing to do with each other, dramatically differ from each other, and occurred over the course of three years.[7]

In *Lopez v. Donahoe*, this District severed analogous (but less tenuous) claims because the allegations specific to each plaintiff did not support the alleged pattern and practice of discrimination, the association between the plaintiffs' claims were tenuous, and the facts regarding the actions and harms alleged in each claim were unique and inflicted by different persons.  *See Lopez v. Donahoe*, No. 1:11-189, 2012 U.S. Dist. LEXIS 195551, at *6 (S.D. Tex. 2012).  The claims related to the alleged injuries and deaths of Jackson, Henderson, and Wiley, are improperly

---

[7] Henderson on 12/17/2020, Jackson on 12/4/2021, and Wiley on 2/7/2022.  (Doc. 8-1 at ¶¶67, 61, 58.)

joined and should be severed.

## CONCLUSION

Defendant City of Houston's motion to sever and partially dismiss (Doc. 5) should be granted.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

KELLY A. DEMPSEY
Chief, Torts & Civil Rights Section

Date: February 27, 2023.          By:     */s/ Melissa Azadeh*
                                           Melissa Azadeh
                                           State Bar No.  24064851
                                           Telephone (832) 393-6270
                                           Facsimile (832) 393-6259
                                           melissa.azadeh@houstontx.gov
                                           CITY OF HOUSTON LEGAL DEPARTMENT
                                           900 Bagby, 3rd Floor
                                           Houston, Texas 77002
                                           **ATTORNEYS FOR DEFENDANT**
                                           **CITY OF HOUSTON**

## VERIFICATION

I hereby verify, under penalty of perjury, that the attached Exhibit 1 contains a true, correct, and complete copy of the training produced to Plaintiffs' lead counsel in the Sauls matter with the original bates labelling.

February 27, 2023                 */s/ Melissa Azadeh*
Date                                   Melissa Azadeh

## CERTIFICATE OF SERVICE

I certify that on February 27, 2023, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document, and any attachments, were delivered to all opposing counsel(s) by electronic filing of same in accordance with the District's ECF service rules, and alternatively via e-mail and/or facsimile transmission, to:

Michael Patrick Doyle
Patrick M. Dennis
Jeffrey L. Avery
Emma r. Brockway
Doyle Dennis LLP
3401 Allen Parkway, Suite 100
Houston, Texas 77019
service@doylelawfirm.com

Reginald E. McKamie, Sr.
Law Office of Reginald E. McKamie, Sr.
2120 Welch St.
Houston, Texas 77019
mckamie@mckamie.com

                                 */s/ Melissa Azadeh*
                                 Melissa Azadeh