**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JANICE JACKSON, INDIVIDUALLY, AND** | § | |
| **AS REPRESENTATIVE OF THE ESTATE** | § | |
| **OF HER LATE HUSBAND, MICHAEL** | § | |
| **WAYNE JACKSON; ARLENE GALLIEN,** | § | |
| **INDIVIDUALLY AND AS** | § | |
| **REPRESENTATIVE OF THE ESTATE OF** | § | |
| **CARL WILEY JR.; CAMILA SIMPSON AS** | § | **CIVIL ACTION NO. 4:23-CV-00052** |
| **NEXT FRIEND OF XXXXXXX XXXXX,** | § | |
| **GYNELL HENDERSON, INDIVIDUALLY** | § | |
| **AND AS REPRESENTATIVE OF THE** | § | |
| **ESTATE OF RASHAD HENDERSON; AND** | § | |
| **JOHN HENDERSON JR., INDIVIDUALLY,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **V.** | § | |
| | § | |
| **THE CITY OF HOUSTON,** | § | |
| | § | |
| *Defendant*. | § | |

<u>**DEFENDANT CITY OF HOUSTON'S RULE 12(C) MOTION FOR**</u>
<u>**JUDGMENT ON THE PLEADINGS**</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

      Defendant City of Houston ("Defendant" or "City") files this Motion for Judgment on the

Pleadings pursuant to Rule 12(c), Fed. R. Civ. P., and respectfully shows the following:

## TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................ii

TABLE OF AUTHORITIES .............................................................................................iv

STATEMENT OF THE NATURE AND STAGE OF PROCEEDING...........................1

ISSUES PRESENTED .......................................................................................................1

SUMMARY OF THE ARGUMENT..................................................................................1

STANDARD OF REVIEW ................................................................................................3

ARGUMENT ......................................................................................................................4

I.   Plaintiffs lack the capacity to bring survival actions on behalf of the estates.............................4

II.   Plaintiffs fail to establish governmental action to support any 42 U.S.C. 1983, 42 U.S.C. 1982, or Title VI claim. ........................................................................................6

III. Plaintiffs fail to state a *Monell* claim against the City under section 42 U.S.C. 1983. ............8

    A.   Plaintiffs fail to identify an official City policy of racial profiling "drivers and neighborhoods" for highspeed chases or substantive due process violations.....................8

    B.   State mandated training that conforms with the law is not an unconstitutional City policy or practice. ........................................................................................10

    C.   Plaintiffs fail to plausibly allege a custom or widespread practice of racial profiling or substantives due process violations. ...............................................12

        (i)  General allegations regarding traffic stops and racial demographics of neighborhoods do not support a custom or widespread practice. ..........................................13

        (ii) Preexisting neighborhood demographics and purported statistical disparities disconnected from any alleged discriminatory policy or practice of the City do not equate with racial profiling by HPD officers. ..................................................14

        (iii)   Statistics show HPD does not racially profile minorities...........................15

    D.   Plaintiffs fail to plausibly allege a failure to train, supervise, or discipline.........................16

    E.   Plaintiffs fail to plausibly allege a failure to "investigate, supervise, or discipline."...........18

    F.   No Ratification ..................................................................................................19

    G.   Plaintiffs fail to plausibly allege a municipal policy or custom that was the moving force behind an alleged constitutional violation.....................................20

IV. Plaintiffs fail to plausibly allege a constitutional violation to support a § 1983 claim. ............20

    A.   No Fourteenth Amendment Substantive Due Process violation alleged.............................20

        (i)  State Created Danger Theory is unavailable and inapplicable to Plaintiffs' allegations. .......................................................................................................21

    B.   No Fourteenth Amendment Equal Protection violation alleged. ..................................22

V.   Plaintiffs fail to plausibly allege any element of a Title VI claim..............................................23

VI. Plaintiffs lack statutory standing and fail to state a 42 USC § 1982 claim.................................24

VII. Plaintiffs fail to plausibly allege a claim for which Defendant's governmental immunity is waived under state law. ...........................................................................24

VIII.   Punitive damages are not recoverable against the City. ........................................25

**CONCLUSION & PRAYER** ........................................................................................................25

**VERIFICATION**...............................................................................................................................26

**CERTIFICATE OF SERVICE** .................................................................................................. 27

APPENDIX.............................................................................................................................................28

## TABLE OF AUTHORITIES

**Cases**

*Adkison v. Polaris Indus., Inc.*, No. 3:18-CV-02014-M,
   2020 WL 137226 (N.D. Tex. Jan. 13, 2020)...................................................................5
*Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021)...........................................4
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................................................2
*Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005).....................................4
*Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015)..........................................................15
*Bell v. Hinkle*, 607 S.W.2d 936, 937 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.)...........5
*Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004)..................................................22
*Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233 (5th Cir. 2020) ...........................23
*Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1988) ...........................................................6
*Checki v. Webb*, 785 F.2d 534 (1986)...............................................................................21
*Christilles v. Southwest Texas State Univ.*, 639 S.W.2d 38
   (Tex. App.—Austin 1982, writ ref'd n.r.e.) ...................................................................25
*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)..................................................................6
*City of Austin v. Membreno Lopez*, 632 S.W.3d 200 (Tex. App.—Austin 2021, pet. denied) .............5
*City of Austin v. Membreno Lopez*, 632 S.W.3d 200 (Tex. App.—Austin 2021, pet. filed)................5
*City of Hous. v. Giron*, No. 01-21-00486-CV, 2022 Tex. App. LEXIS 4461 (Tex. App.—Houston
   [1st Dist.] June 30, 2022, no pet. h.) .............................................................................25
*City of Houston v. Wilburn*, 445 S.W.3d 361 (Tex. App.—Houston [1st Dist.], 2013).....................18
*City of Los Angeles v. Heller*, 475 U.S. 796 (1986)..........................................................20
*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) ...........................................25
*City of San Antonio v. Maspero*, 640 S.W.3d 523 (2022) ................................................25
*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)........................................................19
*City of Watauga v. Gordon*, 2014 WL 2535995, 13-0012 (Tex. 2014)..............................24
*Collins v. Morgan Stanley Dean Witter*, 224 F3d 496 (5th Cir. 2000).................................9
*Conner v Travis County*, 209 F3d 794, 796 (5th Cir 2000),..............................................18
*Connick v. Thompson*, 563 U.S. 51 (2011)...............................................................11, 16
*Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986).............................................................19
*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)...................................................7, 21
*Covington v. City of Madisonville*, 812 F. App'x 219 (5th Cir. 2020)................................19
*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017)..........................................8, 14
*Davis v. Romer*, 600 F. App'x 926 (5th Cir. 2015).............................................................7
*Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849 (5th Cir. 2012) .......................................22
*Edwards v. City of Balch Springs*, __ F.4th __, No. 22-10269, 2023 U.S. App.
   LEXIS 14522 (5th Cir. Jun. 9, 2023)......................................................................10, 11
*Estate of C.A. v. Castro*, 547 F. App'x 621 (5th Cir. 2013),
   cert. denied, 134 S. Ct. 1893 (2014) .............................................................................22
*Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992)..............................................20
*Fuentes v. Nueces Cty.*, 689 F. App'x 775 (5th Cir. 2017) ...............................................14
*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011).........................................................2
*Gibson v. Texas Dep't of Ins.*, 700 F.3d 227 (5th Cir. 2012) ...........................................23
*Greene v. Plano, I.S.D.*, 227 F. Supp. 2d 615 (E.D. Tex. 2002) .........................................8
*Hale v. King*, 642 F.3d 492 (5th Cir. 2011)......................................................................2

*Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005)..................................................9

*In the Estate of Carl Wiley, Jr., Deceased*, Case No. 512050, Probate Court No. 2, Harris County,
   Texas .........................................................................................................................................5

*Jacks v. Normand*, 2018 U.S. Dist. LEXIS 43510,
   2018 WL 1363756 (E.D. LA, Feb. 23, 2018)............................................................................7

*James v. Tex. Collin Cnty.*, 535 F.3d 365 (5th Cir. 2008) ..............................................................6

*Kuhl v. City of Garland*, 910 S.W.2d 929 (Tex. 1995)..................................................................25

*Leatherman v. Tarrant County Narcotics Intelligence*, 954 F.2d 1054 (5th Cir. 1992) .....................18

*Lee v. Ishee*, 383 F. App'x 499 (5th Cir. 2010)............................................................................24

*Lester v. City of Coll. Station*, 103 F. App'x 814  (5th Cir. 2004) (per curiam)...................................22

*Lewis v. Woods*, 848 F.2d 649 (5th Cir. 1988) .............................................................................6

*Love v. De Carlo Homes, Inc.*, 482 F.2d 613  (5th Cir. 1973) ........................................................24

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996) .................................................9

*Martinez v. Nueces County*, ___ F.4 ___, No. 22-40663, 2023 U.S. App.
   LEXIS 15915, (5th Cir. Jun. 23, 2023)..............................................................................8, 16

*Mateo v. Ta Hsin, Inc.*, No. 7:19-CV-419, 2021 U.S. Dist. LEXIS 197645 (S.D. Tex. 2021).............9

*McKinney v. Irving Independent School Dist.*, 309 F.3d 308 (5th Cir. 2002)....................................6

*Memphis v. Greene*, 451 U.S. 100 (1981) ...........................................................................15, 24

*Mireles v. City of Harlingen*, Civil Action No. B:13-81,
   2013 U.S. Dist. LEXIS 186342 (S.D. Tex. 2013) ...................................................................21

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).....................................*passim*

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007) ....................................................................8

*O'Neal v. Cazes*, 257 Fed. Appx. 710 (5th Cir. 2007)..................................................................17

*O'Dwyer v. Nelson*, 310 F. App'x 741 (5th Cir. 2009)..................................................................20

*Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 531 F. App'x 454 (5th Cir. 2013) .............23

*Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018).......................................................13

*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) .....................................................*passim*

*Phillips v. City of Dallas*,
   781 F.3d 772 (5th Cir. 2015) ...............................................................................................2

*Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194 (5th Cir. 2015) ............................................21

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) .........................................................*passim*

*Pinedo v. City of Dallas*, No. 3:14-CV-958-D,
   2015 U.S. Dist. LEXIS 5272, 2015 WL 221085 (N.D. Tex. 2015) ...........................................22

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001).....................................................*passim*

*Powell v. Zurich Am. Ins. Co.*, 653 Fed. Appx. 292 (5th Cir. 2016).................................................24

*Price v. Estate of Anderson*, 522 S.W.2d 690 (Tex. 1975)..............................................................4

*Priester v. Lowndes Cnty.*, 354 F.3d 414 (5th Cir. 2004) ..............................................................22

*Raina v. Veneman*, 152 F. App'x 348 (5th Cir. 2005).................................................................23

*Ratliff v. Aransas Cty., Texas*, 948 F.3d 281 (5th Cir. 2020)..........................................................13

*Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Tex.*,
   260 F. Supp. 3d 738 (S.D. Tex. 2017), *aff'd sub nom. Residents Against Flooding v. Reinvestment*
   *Zone No. Seventeen*, 734 Fed. Appx. 916 (5th Cir. 2018)........................................................16

*Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005)..........................................................16

*Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205 (5th Cir. 2016) ...........................................5

*Rodriguez v. Avita*, 871 F.2d 552 (5th Cir. 1989) .......................................................................18

*Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389  (5th Cir. 1999) ........................................................22

*Scott v. Harris*, 550 U.S. 372 (2007)..................................................................................7, 17

*Semien v. Pizza Hut of Am., Inc.*, No. 98-31163,
    1999 U.S. App. LEXIS 38901 (5th Cir. 1999)................................................................14
*Spiller v. City of Tex. City, Police Dep't*, 130. F.3d 162 (5th Cir.1997) ...................................... *passim*
*Stewart v. Murphy*, 174 F.3d 530 (5th Cir. 1999) .....................................................................7
*Stout v. Vincent*, 717 Fed. Appx. 468 (5th Cir. 2018) (unpublished)......................................23
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ...................................9
*Texas A&M Univ. v. Bishop*, 156 S.W.3d 580 (Tex. 2005) ......................................................25
*Treadway v. Holder*, 309 S.W.3d 780 (Tex. App.—Austin, 2010) ...........................................18
*Turner v. Perry*, 278 S.W.3d 806 (Tex. App.—[Houston 14th.] Dist., 2009) ..........................18
*United States v. Paige*, 136 F.3d 1012 (5th Cir. 1998) ..............................................................6
*Vaughner v. Pulito*, 804 F.2d 873 (5th Cir. 1986)....................................................................24
*Washington v. Smith*, No. 22-632, 2022 U.S. Dist. LEXIS 202974 (E.D. La. 2022) ...........19
*Wilder v. Morgan*, No. 6:20-CV-01383, 2022 U.S. Dist. LEXIS 50717 (W.D. La. 2022)....................14
*Wong v. Stripling,* 881 F.2d 200 (5th Cir. 1989)........................................................................6
*World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747 (5th Cir. 2009) .........19
*Zarnow v. City of Wichita Falls*, Tex., 614 F.3d 161 (5th Cir. 2010)..............................11, 20

## Statutes, Rules, and Constitution

42 U.S.C. § 1982 ......................................................................................................... passim
42 U.S.C. § 1983 ......................................................................................................... passim
TEX. GOV'T CODE §§ 614.021-.023 .................................................................................18
FED. R. CIV. P. 12 ...........................................................................................................2, 4
FED. R. CIV. P. 17 ...............................................................................................................4
FED. R. CIV. P. 41 ...............................................................................................................4
FED. R. EVID. 201 ......................................................................................................2, 7, 9
TEX. CIV. PRAC. & REM. CODE § 101.021 ....................................................................24
TEX. CIV. PRAC. & REM. CODE § 101.024 ....................................................................25
TEX. CIV. PRAC. & REM. CODE § 101.055 ....................................................................25
TEX. CIV. PRAC. & REM. CODE § 101.056 ....................................................................25
TEX. EST. CODE § 201.001 .................................................................................................5
TEX. EST. CODE § 201.052 .................................................................................................5
TEX. PROB. CODE § 3 .........................................................................................................5
TEX. PROB. CODE § 38 .......................................................................................................5
Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq...........................1, 4, 6, 23
U.S. Const. amend. XIV ............................................................................................... *passim*

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDING

Janice Jackson as the alleged surviving wife of Michael Wayne Jackson initiated this action in state court claiming negligence arising from a motor vehicle accident on December 4, 2021.  Doc. 1-1; Doc. 4-1 at ¶¶61-62.  Defendant, the City of Houston, was served on August 16, 2022, and filed an answer on September 6, 2022.  Docs. 1-2, 1-3.

On December 7, 2022, the state court judge granted the City's opposed motion for leave to designate three suspects as responsible third parties, and granted the City's special exceptions, ordering Jackson to amend her pleadings within thirty days to state a valid waiver of the City's governmental immunity from Jackson's negligence per se claim.  Docs. 14-1, 14-2, 14-3.  On December 16, 2022, Jackson filed an amended petition adding two additional sets of plaintiffs who assert claims arising from the deaths of Carl Wiley, Jr., on February 7, 2020, and Rashad Henderson on December 17, 2020, and federal causes of action.  Doc. 4-1.

The City timely removed to this Court.  Doc. 1.  On February 28, 2023, the Court denied the City's motion to sever the improperly joined parties and claims.  Doc. 9.  A scheduling order was entered on April 17, 2023.  Doc. 12.  On June 22, 2023, the Court denied the opposed motion to intervene by non-party Courtney Lane.  Doc. 16.

## ISSUES PRESENTED

1. Plaintiffs lack the capacity to bring survival actions on behalf of the estates.
2. Plaintiffs fail to establish governmental action to support any 42 U.S.C. 1983, 42 U.S.C. 1982, or Title VI claim.
3. Plaintiffs fail to state a *Monell* claim against the City under section 42 U.S.C. § 1983.
4. Plaintiffs fail to plausibly allege a constitutional violation to support a § 1983 claim.
5. Plaintiffs fail to plausibly allege any element of a Title VI claim.
6. Plaintiffs lack statutory standing and fail to state a 42 U.S.C. § 1982 claim.
7. Plaintiffs fail to state a claim for which the City's governmental immunity is waived under state law.
8. Punitive Damages are not recoverable against the City.

## SUMMARY OF THE ARGUMENT

Gallien, Henderson, and Jackson, are neither legal heirs nor representatives of the estates of Jackson, Wiley, and Henderson, and administrations are either pending or necessary, defeating their alleged capacity to bring claims on behalf of the estates.

Plaintiffs do not allege governmental action by the City to support any federal claim.  Wiley and Henderson allege injuries caused by private actors who have been charged with assault and murder.  Jackson's accidental injury involved a motor vehicle collision with an HPD officer, but his federal claims rely on the earlier pursuit and apprehension of armed carjackers by other HPD officers, and the dangers created by fleeing drivers, not any action by the City.

Plaintiffs fail to identify an official City policy, custom, or practice, that was the moving force behind any alleged violation of their constitutional rights. HPD General Order 600-04 does not authorize racial discrimination or substantive due process violations.  The alleged unconstitutional training is not a City policy, but Texas Commission on Law Enforcement (TCOLE) mandated and implemented training which conforms with federal law and the constitution.   Plaintiffs fail to establish a custom or widespread practice of racial profiling drivers and neighborhoods for highspeed chase or substantive due process violations.  Plaintiffs cannot rely on their own incidents to create a custom or practice, which nevertheless, drastically differ from each other and at best involve issues of ordinary negligence, which simply are not cognizable under 42 U.S.C. §1983.  Plaintiffs fail to specifically identify any plausible failure to train, investigate, or discipline, or the necessary pattern of similar instances placed in context of one of the largest cities and police departments in the nation.

Plaintiffs do not allege facts showing any authorized City policymaker investigated and approved both an officer's decision to violate the rights of Jackson, Wiley, or Henderson, as well as the alleged wrongful basis for it.  Nor do they present the extreme factual scenario to which ratification may apply.

Plaintiffs do not plausibly allege any constitutional violation to support a 42 U.S.C. § 1983 claim.   Plaintiffs do not claim they themselves were discriminated against or chased by the City or its officers.   A highspeed chase with no intent to harm, or the generalized dangers associated with highspeed chases, cannot support a substantive due process violation.

Plaintiffs do not plausibly claim any intentional discrimination against them by the City or an authorized policymaker and lack standing to assert conclusory claims of discriminatory pursuits of third parties who Plaintiffs admit were fleeing suspects.  Preexisting neighborhood demographics and purported statistical disparities disconnected from any alleged discriminatory policy or practice of the City do not equate with racial profiling by HPD officers.   Even if they did, Plaintiffs fail to identify the location where Jackson, Wiley, or Henderson, were injured, facts demonstrating the City was aware of their locations or races, or that the City controlled the driving of any fleeing suspect.  Plaintiffs misrepresent statistical data that demonstrates HPD—which is a majority-minority police department—does not racially profile or discriminate against drivers or neighborhoods.

Plaintiffs fail to plausibly establish any element of a Title VI discrimination claim.  Plaintiffs have not alleged intentional discrimination by the City in the sale or rental of real or personal private property under 42 U.S.C. § 1982; the purported right to use public streets and sidewalks does not suffice.  The City is immune from any alleged state law claims.  Punitive damages are not recoverable against the City.

## STANDARD OF REVIEW

After the pleadings are closed, a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).   A motion for judgment on the pleadings under Rule 12(c) is determined by the same standards applicable to a motion under Rule 12(b)(6), which authorizes dismissal for failure to state a claim upon which  relief may be granted.  *Phillips v. City of Dallas*, 781 F.3d 772, 775 (5th Cir. 2015).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citations and quotations omitted); FED. R. EVID. 201(f)). However, courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions. *Id. See also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

## ARGUMENT

### I.    Plaintiffs lack the capacity to bring survival actions on behalf of the estates.

In addition to dismissal under Rule 12(b)(6), this case should be dismissed pursuant to Rule 41(b), Fed. R. Civ. P., because Plaintiffs lack capacity to bring suit on behalf of the estates of Jackson, Wiley, and Henderson. The capacity to sue as a representative of a decedent is determined "by the laws of the state where the court is located." FED. R. CIV. P. 17(b)(3). Under Texas law, "a deceased's estate is not a legal entity and may not properly sue or be sued as such."[1] "An estate only has the capacity to sue through either its legally appointed legal representative or an heir who can demonstrate that there is 'no administration pending and none [is] necessary.'"[2] A plaintiff who is not the estate's legal representative must establish, *inter alia*, that he/she is both a legal heir *and* the sole

---

[1] *Aguirre v. City of San Antonio*, 995 F.3d 395, 423 (5th Cir. 2021) (citing *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975)).

[2] *Id.* (quoting *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex. 2005)).

heir of the estate; that the deceased had no children or other heirs; owned no real property, accounts or assets; had no outstanding debts; and that all beneficiaries have agreed that the plaintiff will take the deceased's entire estate.[3]  A parent may be an estate's beneficiary *only* if the deceased had no spouse or children.[4]  TEX. PROB. CODE § 38.

**Arlene Gallien** is neither an heir nor the administrator of the estate of Carl Wiley, Jr.  Doc. 4-1 at ¶16.  Gallien's claims must be dismissed because an administration is pending.[5]  *See* TEX. PROB. CODE §§ 3(o), 38.   In addition, the probate court filings identify at least two children or heirs of the estate, (**Exhibits 3, 4, 5**); therefore, Gallien, identified as the deceased's mother, is neither a legal heir, personal representative, nor administrator of the estate with capacity to bring claims under state law.

**Camilla Simpson, as next friend of Xxxxxxx Xxxxx**, the alleged surviving child of Carl Wiley, Jr., is not sufficiently identified as a party and lacks standing to bring an action individually under the Texas Wrongful Death Act.  Doc. 4-1 at ¶17.  Without established paternity under the estates code, even a surviving child lacks standing under Texas law.  TEX. EST. CODE § 201.052 (a)(1)-(2).[6]  Moreover, the admission that Carl Wiley, Jr., had an heir defeats Arlene Gallien's capacity to bring suit as his alleged mother.

**Gynell Henderson**, as the alleged mother of Rashad Henderson, lacks capacity to assert claims on behalf of the estate.  Doc. 4-1 at ¶14.  She has neither pleaded nor proven that she is the estate's legal representative, that an administration is not pending and none is necessary.

**Janice Jackson**, as the alleged surviving wife of Michael Wayne Jackson, initiated probate

---

[3] *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 212 (5th Cir. 2016) (citing *Shepherd v. Ledford*, 962 S.W.2d 28 (Tex. 1998)); *City of Austin v. Membreno Lopez*, 632 S.W.3d 200, 223-24 (Tex. App.—Austin 2021, pet. filed) (if suit is brought during four-year period to institute administration proceedings, heirs may maintain survival suit if they allege and prove **that there is no administration pending and that none is necessary**).
[4] *Adkison v. Polaris Indus., Inc.*, No. 3:18-CV-02014-M, 2020 WL 137226, at *3 (N.D. Tex. Jan. 13, 2020) (citing TEX. EST. CODE § 201.001(c)).
[5] *In the Estate of Carl Wiley, Jr., Deceased*, Case No. 512050, Probate Court No. 2, Harris County, Texas.
[6] TEX. EST. CODE § 201.052.  *See Bell v. Hinkle*, 607 S.W.2d 936, 937 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Membreno Lopez*, 632 S.W.3d at 224.

court proceedings on January 31, 2022, but has not been appointed administrator.  Doc. 4-1 at ¶13.

**Exhibits 1 and 2.**  The probate court filings identify adult heirs, as well as personal property and assets belonging to the estate.  *Id.*  Therefore, Janice Jackson can neither plead nor prove that an administration is neither pending nor necessary to assert claims on behalf of the estate.

## II.   Plaintiffs fail to establish governmental action to support any 42 U.S.C. 1983, 42 U.S.C. 1982, or Title VI claim.

Plaintiffs fail to plausibly establish the requisite governmental action to support any federal claim.[7]  Section 1983 claims require either direct governmental action or a nexus between a private party's actions and governmental conduct.  *McKinney v. Irving Independent School Dist.*, 309 F.3d 308, 312 (5th Cir. 2002).[8]  Under the latter alternative, the City is not responsible for a private party's decisions unless it "has exercised coercive power or has provided such significant encouragement, . . . that the choice must in law be deemed to be that of the [City].'"  *Wong v. Stripling,* 881 F.2d 200, 202 (5th Cir. 1989) (citations omitted).

Both Carl Wiley, Jr. and Rashad Henderson were allegedly injured and killed by collisions with vehicles driven by private parties neither employed nor controlled by the City, whose intentional and criminal conduct caused their deaths.  Carl Wiley, Jr. was killed by a fleeing driver, Cameron Rogers, who after leading HPD officers on a pursuit, ran a red light at high speeds and struck Wiley's vehicle.  Doc. 4-1 at ¶¶58-60.  Cameron Rogers has been indicted for aggravated assault with a motor vehicle causing the death of Carl Wiley, Jr.[9]

---

[7] *See Lewis v. Woods*, 848 F.2d 649, 652 (5th Cir. 1988); *see also United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998) (requiring governmental action for claim under Fourth Amendment); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (Fourteenth Amendment equal protection violation "occurs only when the government treats someone differently than others similarly situated").

[8] *See, e.g.*, *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994).

[9] Doc. 5-1. *The State of Texas v. Cameron Rogers*, Cause No. 175794801010, in the 338th Criminal District Court of Harris County, Texas.  The Court may take judicial notice of public records and proceedings of another court under Rule 201, Federal Rules of Evidence.   FED. R. EVID. 201.

Plaintiffs admit a minor female driving a stolen vehicle "in an unsafe, erratic manner," "turned north on Galveston Road, where she struck Rashad Henderson's vehicle at a high rate of speed, thereby pushing Mr. Henderson's vehicle off the road and into a tree." Doc. 4-1 at ¶¶68-69. The minor female, K.S., has been charged with the murder of Rashad Henderson; K.S. was not being chased by an HPD officer. *Id.*, Doc. 4-1 at ¶¶67-70.

Although Michael Wayne Jackson was allegedly injured and killed in a collision with a vehicle driven by HPD Officer Hernandez, his federal claims are premised on ***other*** officers' earlier pursuit and apprehension of armed carjackers in another location, who Plaintiffs allege were Black, and ***the dangers those drivers created*** by leading officers on a highspeed pursuit.[10] *See County of Sacramento v. Lewis*, 523 U.S. 833, 855(1998) ("[Deputy] Smith was faced with a course of lawless behavior for which the police were not to blame"); *Scott v. Harris*, 550 U.S. 372, 384, 386 (2007) (recognizing danger as having been created by fleeing suspect who "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved"); *Davis v. Romer*, 600 F. App'x 926, 927 (5th Cir. 2015) (fleeing driver "intentionally placed himself and the public in danger."). Any accidental alleged injury to Jackson by an HPD driver presents ordinary negligence issues, which must be resolved under Texas state law and "simply are not cognizable under 42 U.S.C. §1983." *Jacks v. Normand*, 2018 U.S. Dist. LEXIS 43510, 2018 WL 1363756 at *4 (E.D. LA, Feb. 23, 2018) (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)).

The absence of facts plausibly establishing either racial discrimination against, or an unconstitutional pursuit of either Jackson, Wiley, or Henderson, by Defendant or any of its employees

---

[10] *See* Doc. 14-3 at 2-3, 8; Doc. 4-1 at ¶¶61-63. A certified copy of the HPD Crash Investigation Report was attached to the City's opposed motion to designate responsible third parties in the state court proceedings and may be judicially noticed pursuant to Rule 201. Doc. 14-3 at 7-13.

defeats the only governmental action Plaintiffs have alleged to support a federal claim.[11]   *See also* Doc.

17 (incorporated by reference in its entirety herein).

## III.   Plaintiffs fail to state a *Monell* claim against the City under section 42 U.S.C. 1983.

The City of Houston cannot be held liable under § 1983 unless "execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said

to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S.

658, 694 (1978).

> This is an important distinction: A plaintiff may not recover against a municipality via theories of *respondeat superior*—the municipality itself must be responsible for the constitutional violation.  To succeed, the plaintiff must show "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."

*Martinez v. Nueces County*, ___ F.4 ___, No. 22-40663, 2023 U.S. App. LEXIS 15915, *3-4 (5th Cir.

Jun. 23, 2023) (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski*

*v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

"A *Monell* claim does not require the plaintiff to identify a written policy.  In some situations,

a plaintiff can succeed by pointing to similar incidents that are 'sufficiently numerous' and have

'occurred for so long or so frequently that the course of conduct warrants the attribution to the

governing body of knowledge that the objectionable conduct is the expected, accepted practice of city

employees.'"  *Martinez*, LEXIS 15915, at *3-4 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838,

850–51 (5th Cir. 2009)).   "[T]he pattern of examples must have 'similarity' and 'specificity.'"  *Id.* at

*4 (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017)).

### A.   Plaintiffs fail to identify an official City policy of racial profiling "drivers and

---

[11] *Iqbal*, 556 U.S. at 678.  To ascertain if plaintiffs have stated a claim, the Court looks to the facts alleged in the complaint, "rather than labels used to describe those facts."  *Greene v. Plano, I.S.D.*, 227 F. Supp. 2d 615, 619 (E.D. Tex. 2002) (citing *Lewellen v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 34 F.3d 345, 349 (6th Cir. 1994)); *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

neighborhoods" for highspeed chases or substantive due process violations.

Plaintiffs assert several federal causes of action each depending upon either: (1) an alleged policy, custom usage, or ratification, of racially profiling drivers and neighborhoods for initiating highspeed chases;[12] (2) a general "custom, practice, or usage of HPD to engage in high-speed pursuits and risking harm to innocent by-standers because, officers know that officers have little to no risk of harm when the [sic] engage in a high-speed pursuit,"[13] which "create[] a substantial risk of harm to the public and to the fleeing drivers,"[14] or (3) both.

Plaintiffs rely on HPD General Order 600-04, Motor Vehicle Pursuits, which they attached to their amended complaint and directly contradicts each of their conclusory theories of *Monell* liability. Doc. 4-1 at pgs. 89-100.  General Order 600-04 does not authorize or encourage either racial profiling or substantive due process violations.  *Id.* at ¶¶72-84.

The Court may also consider General Orders published on the Houston Police Department's official website[15] that are referred to in the complaint and central to Plaintiffs' claims.[16]  Even if they are not referenced in the complaint and central to the claims, "[i]t is well established in the Fifth Circuit that courts may take judicial notice of governmental websites and public records in assessing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss."[17]  HPD General Order 600-42 strictly prohibits racial profiling and discrimination in any form by employees and mandates the "department shall take immediate and appropriate action to investigate allegations of discrimination."[18]  Discrimination,

---

[12] Doc. 4-1.at ¶¶6-9, 31, 33-34, 51-53, 55-60, 66-67, 71, 76-82, 89, 91-93, 95, 98, 101, 103, 106-107, 111.

[13] *Id.* at ¶¶2, 5, 21-22, 25, 60, 66, 68, 71, 78-80, 92, 105, 113, 125.

[14] *Id.* at ¶¶2, 20, 26-38, 79-80, 119, 125.

[15] *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011), quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996),  (citing FED. R. EVID. 201(f)).

[16] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).

[17] *Mateo v. Ta Hsin, Inc.,* No. 7:19-CV-419, 2021 U.S. Dist. LEXIS 197645, at *29 (S.D. Tex. 2021) (citing *Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam).

[18] HPD General Order 600-42, Racial Profiling Prohibited.

violations of state or federal law, are prohibited by several other HPD General Orders.  *See* General Order 200-08, Conduct and Authority, at 2 ("Respect for Others.  Employees shall respect the rights of individuals and shall not engage in discrimination, oppression, or favoritism whether by language, act, or act of omission.");[19] *id.* at 4 (employees are charged with knowledge and obedience of all laws); General Order 200-19 (ensuring compliance with the ADA);[20] General Order 300-11 (prohibiting discrimination, harassment, and other conduct);[21] General Order 500-20, Treatment of Prisoners, Suspects, and Other Citizens.[22]

As the Fifth Circuit recently clarified, Plaintiffs' description of their desired vehicular pursuit limitations, which are either already imposed by HPD's General Order or not required by the constitution or federal law, do not establish an unconstitutional City policy.  "[A] written policy cannot be facially unconstitutional solely due to instructions that it leaves out," *even if* the constitution requires those instructions.  *Edwards v. City of Balch Springs*, __ F.4th __, No. 22-10269, 2023 U.S. App. LEXIS 14522, at *7 (5th Cir. Jun. 9, 2023).   Nor is a policy "facially unconstitutional just because it commits some decisions to an officer's discretion, for '[i]f the mere exercise of discretion . . . could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability.'" *Id.* at *7 (citations omitted).

**B.      State mandated training that conforms with the law is not an unconstitutional City policy or practice.**

Plaintiffs misrepresent the contents of training attached to their complaint to claim the City trains officers to initiate highspeed chases based on their subjective beliefs, bias, prejudice, and racial demographics.  Doc. 4-1 at 77-88.

---

[19] HPD General Order 200-08, Conduct and Authority.
[20] HPD General Order 200-19, Americans with Disabilities Act.
[21] HPD General Order 300-11, Discrimination, Harassment, and Other Prohibited Conduct.
[22] HPD General Order 500-20 Treatment of Prisoners and Other Citizens.

First, the attachment Plaintiffs rely on is not City training or policy.  It is 2014 Texas Commission on Law Enforcement (TCOLE) Academy training, implemented and mandated by the State of Texas.  *See* Doc. 8-1.  Plaintiffs omitted the first eleven pages to conceal its source.[23]  The City can only be liable for its own policies and customs, not those of the state.  *Monell*, 436 U.S. at 691; *Connick v. Thompson*, 563 U.S. 51 (2011).  Moreover, "compliance with state requirements [is] a factor counseling ***against*** a failure to train finding." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (citations omitted).

Second, the training contradicts Plaintiffs' allegations.  Plaintiffs combine select words listed from various pages of the exhibit to misrepresent that:

> "as part of its training to evaluate when to initiate a high-speed chase, HPD teaches its officers to evaluate the "social image" of the chase, weigh "urban factors," and evaluate this with their "stresses, attitudes, emotions, prejudices, [and] bias."

Doc 4-1 at 15-16.  "Psychological: stress, attitudes, emotions, prejudices, bias," are merely listed among ***many*** "Human Factors," [Doc. 8-1 at 17, COH-Sauls01372], in addition to Environmental Factors, Vehicular Factors, and Legal Factors, affecting initiation and continuation of a pursuit.  [*Id.* at 16 COH-Sauls01371.]

Training officers to be aware of implicit bias, prejudice, psychological and physiological factors is not unconstitutional.  As the Fifth Circuit emphasized in *Edwards*, policy or training is not unconstitutional because it allows an officer to rely on "subjective criteria," "subjective beliefs," and "subjective evaluations." *Edwards*, LEXIS 14522, at *13.  Plaintiffs' unsupported inference that a presentation merely listing human factors means officers are taught to discriminatorily initiate or continue pursuits is grossly deficient to state a claim. The training requires officers to weigh all

---

[23] *Id.*, Doc. 4-1 at 77-88.  Doc. 8-1 contains the complete copy of the training, bates labeled COH-Sauls01357-01417, TEXAS COMMISSION ON LAW ENFORCEMENT HOUSTON POLICE ACADEMY INSTRUCTORS LESSON PLAN, Driving Safety & Pursuit Refresher.  Plaintiffs omitted COH-Sauls01357-01368. Doc. 4-1 at 77-88.

appropriate factors, but *only* initiate a pursuit based on the seriousness of the offense as known by the officer at the initiation of the pursuit.[24] The pages Plaintiffs deliberately omitted also require officers to continuously weigh the risk to public safety and "abandon or terminate the pursuit" if public safety is not "better served by pursuing under the existing circumstances." [Doc. 8-1 at 9, COH-Sauls01364.]

Finally, the pleadings do not establish the requisite pattern of alleged constitutional violations attributable to the purported training deficient with similarly, specificity, and frequency, in context of "one of the Nation's largest cities and police forces." *Pineda*, 291 F.3d at 329.

### C.    Plaintiffs fail to plausibly allege a custom or widespread practice of racial profiling or substantives due process violations.

Because Plaintiffs do not identify a policy maker or an officially authorized policy, to impose liability on the City, they must allege a widespread practice that is so common and well settled as to constitute a custom that fairly represents municipal policy. *Monell*, 436 U.S. at 694. *See also Martinez*, No. 22-40663 at *3-4. Plaintiffs claim that "for years, the policymakers within City of Houston adopted a custom, practice, pattern, and usage of authorizing police officers to profile Black drivers and racially target predominantly Black neighborhoods when deciding whether to engage or participate in high-speed pursuit." Doc. 4-1 at 2. The pleadings, however, do not plausibly identify ***any*** instances of racially discriminatory highspeed chases that resulted in injuries to third parties by the fleeing driver or substantive due process deprivations. Plaintiffs neither allege facts suggesting that any highspeed chase was initiated because of the driver's race or the racial demographics of a neighborhood, nor identify a similarly situated, fleeing White driver who was not chased, or a single instance of HPD's racially motivated "shielding" of White neighborhoods. Doc. 4-1 at ¶4.

In *Spiller v. City of Tex. City, Police Dep't*, 130. F.3d 162 (5th Cir.1997), the Fifth Circuit

---

[24] Doc. 8-1 at 16, COH-Sauls01371. *See also id.* at 17, COH-Sauls01372 ("Officers must balance the seriousness of the pursuit against the possible damage or injury considering the existing circumstance").

rejected similar (but stronger) allegations as "vague and conclusory" by a Black motorist, arrested without probable cause, that his arrest resulted from the police department's general policy of "disregard[ing] ... the rights of African American citizens" and of "engag[ing] [African Americans] without regard to probable cause to arrest." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (discussing *Spiller*, 130 F.3d at 167).   In *Peña*, the Court rejected the plaintiffs' characterization of a similar policy but with greater particularity because "her allegations [were] equally conclusional and utterly devoid of 'factual enhancements.'" *Id.* at 622 (cleaned up) (citing *Iqbal*, 556 U.S. at 678).

Here, the only specific facts alleged relate to the indirect injuries to Wiley and Henderson by fleeing drivers who caused their deaths, and the accidental injury to Jackson, who was neither chased by HPD officers nor injured during a highspeed chase.   When challenged in a 12(b)(6) context, the plaintiff "must do more than describe the incident that gave rise to his injury."[25]   Plaintiffs' own incidents are deficient and dissimilar from each other.   Plaintiffs only describe the pursuit of a Black driver (Cameron Rodgers) who caused Wiley's injuries and death, and the decision ***not*** to pursue a Black female driver who later caused Henderson's, refuting their conclusion that HPD "racially profile drivers and neighborhoods when engaging (or deciding not to engage) high speed chases."   Doc. 4-1 at ¶91.   The pleadings neither identify the specific neighborhoods where the relevant pursuits were initiated, where Plaintiffs resided or were allegedly injured.   These failures are dispositive.

### (i) General allegations regarding traffic stops and racial demographics of neighborhoods do not support a custom or widespread practice.

Incompletely alleged statistics regarding the overall number of HPD traffic stops and the races of persons stopped or issued citations, or the number of chases and general demographics of various Houston neighborhoods, or the general dangers created by fleeing suspects who lead the police on

---

[25] *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña*, 879 F.3d at 622).

highspeed pursuits, are too dissimilar from the alleged violations here, and irrespectively, "lack[] the detail necessary to find a policy on the part of the City." *Davidson,* 848 F.3d at 396-97; *Fuentes v. Nueces Cty.*, 689 F. App'x 775, 778 (5th Cir. 2017).[26] Moreover, the statistics refute Plaintiffs' claims. The race of the suspect was known prior to just 2.1% or 2.4% of the hundreds of thousands of traffic stops conducted by HPD officers each year.  Doc. 5 at 6, n.2, n.3.

Thirteen pages of the complaint discuss purported racial demographics of Houston neighborhoods and vehicular pursuit statistics, [Doc. 4-1 at ¶¶36-60], but Plaintiffs omit ***the locations*** where any alleged pursuit was initiated by an officer or the neighborhoods where Jackson, Wiley, or Henderson were injured or resided.  Plaintiffs do not provide any facts to suggest a single traffic stop or highspeed chase was discriminatorily motivated, let alone establish a pattern based in context of "one of the Nation's largest cities and police forces," and thousands of traffic stops they acknowledge HPD performs annually.[27]  Doc. 4-1 at ¶30, n. 25.

> **(ii)** **Preexisting neighborhood demographics and purported statistical disparities disconnected from any alleged discriminatory policy or practice of the City do not equate with racial profiling by HPD officers.**

Plaintiffs provide no facts from which to infer that any alleged statistics are the result of intentional discrimination by the City or its officers, rather than the long history of racism, public policies, and institutional practices that built and sustain separate and unequal neighborhoods across the United States.[28]  At best, Plaintiffs purport to demonstrate a disparate impact resulting from numerous factors unrelated to any factually alleged discriminatory intent or action by the City.  As the

---

[26] *See also Semien v. Pizza Hut of Am., Inc.*, No. 98-31163, 1999 U.S. App. LEXIS 38901, at *5 (5th Cir. 1999) (affirming dismissal of claims relying on statistics of the racial makeup of Lake Charles).

[27] *Pineda.*, 291 F.3d at 329.  *See also Wilder v. Morgan*, No. 6:20-CV-01383, 2022 U.S. Dist. LEXIS 50717, at *13-14 (W.D. La. 2022) ("Nor does Wilder's allegation that 1,172 use-of-force reports were filed by LPD officers from 2010 through 2019 show such a pattern without additional context.  Wilder pleads no facts showing that this number of use-of-force reports is so unusual or extreme that it supports an inference of a persistent pattern of excessive force violations.")

[28] *See Causes and Consequences of Separate and Unequal Neighborhoods, Structural Racism Explainer Collection*, Urban Institute, by Margery Austin Turner and Solomon Greene, citing Ellen, Ingrid Gould, and Justin Peter Steil, eds.

Supreme Court has explained:

> Almost any traffic regulation--whether it be a temporary detour during construction, a speed limit, a one-way street, or a no parking sign--may have a differential impact on residents of adjacent or nearby neighborhoods, and because urban neighborhoods are so frequently characterized by a common ethnic and racial heritage, a regulation's adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group[.]

*Memphis v. Greene*, 451 U.S. 100, 102 (1981).

### (iii)   Statistics show HPD does not racially profile minorities.

Although not determinative as to the possibility of discrimination, the Court should note that the Houston Police Department is a ***majority-minority*** police department and has been for many years.[29]   Plaintiffs' allegations are misleading:

- Plaintiffs allege that HPD has doubled and tripled the number of chases per year between 2000 and 2020, and that the number of HPD chases reported in 2020 nearly tripled the number reported in 2000.  Doc. 4-1 at ¶¶28-29.  Plaintiffs fail to mention that reported crimes also tripled in that timeframe.[30]  HPD reported 7,981 more violent crimes in 2020 than in 2000.[31]  Plaintiffs conveniently omit the years with fewer chases, corresponding with fewer violent crimes reported by HPD.  (See Appendix at Chart A and Graph B.)

- Plaintiffs compare the race of allegedly chased drivers to the overall population instead of the population of ***criminal offenders*** in the City as reported by the FBI.   Doc. 4-1 at ¶¶ 32-33.  Any alleged racial disparity among suspects chased by HPD corresponds with the racial demographics of reported criminal offenders within HPD's jurisdiction.  Plaintiffs allege that Black drivers made up 56.39% of HPD chases but only 22% of the general population in 2020.  But ***59% of violent criminal offenders*** reported by HPD in 2020 were Black or African American.  (See Appendix at Chart C.)  Plaintiffs allege that Black drivers made up 58.634% of HPD chases in 2018 and 23% of the population.  But ***63% of violent criminal offenders*** reported by HPD in 2018 were Black or African American.[32]  (See Appendix at Chart C.)

- Despite the higher percentage of Black offenders reported, HPD arrests roughly similar numbers of White versus Black or African American individuals.  (*Id.* at Chart D.)

- Plaintiffs' allegations exclude the large fraction of drivers whose race was unknown and not

---

[29] See *Take a Walk in Someone Else's Shoes: A Cultural Intelligence Training Experience for Law Enforcement*, Najla Haywood (Aug. 2017), available at https://cops.usdoj.gov/html/dispatch/08-2017/training_experience_for_le.html.

[30] https://cde.ucr.cjis.gov/LATEST/webapp/#/pages/explorer/crime/crime-trend.

[31] According to the Federal Bureau of Investigation (FBI), HPD reported 21,491 violent crimes in 2000; 29,474 violent crimes in 2020. https://cde.ucr.cjis.gov/LATEST/webapp/#/pages/explorer/crime/crime-trend.  The Fifth Circuit has determined that courts may take judicial notice of governmental websites if the information is not subject to reasonable dispute.  Fed. R. Evid. 201(b).  *See e. g.*, *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015).

[32] *Id.*, https://cde.ucr.cjis.gov/LATEST/webapp/#/pages/explorer/crime/crime-trend.

reported.  They do not account for the races of hundreds of drivers ***not chased***.

**D.     Plaintiffs fail to plausibly allege a failure to train, supervise, or discipline.**

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 60.  When the policy or custom alleged is a failure to train, the particular training program's deficiency must be alleged with specificity,[33] and deliberate indifference must be shown by demonstrating "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Martinez*, ___ F.4 ___, No. 22-40663 at *3-4 (citations omitted).

Plaintiffs' allegations fail at nearly every turn.   First, Plaintiffs' vague and conclusory statements do not describe any particular training program's deficiency with specificity.  Plaintiffs claim the City: (1) "failed to train, supervise, and discipline, as well as failed to create policies mandating training, supervision, and discipline of officers related to racially profiling neighborhoods and drivers when evaluating whether to engage in a high-speed pursuit"; and  (2) "should have mandated that officers not engage in racially motivated factors, including evaluating the neighborhood and evaluating the race of the driver, when deciding to engage in a highspeed chase.  Likewise, Defendant should have mandated and trained regarding safer alternatives regarding high-speed pursuits, including utilizing pursuit reduction technology and limiting pursuits to primary and secondary vehicles responding to violent felonies."  Doc. 4-1 at ¶111.

Second, their allegations are wholly contradicted by the pleadings and attachments.[34]  General Order 600-04 and the TCOLE training attached to the pleadings show that HPD followed and implemented each of the "important procedures" Plaintiffs claim were lacking.  Doc. 4-1 at ¶119.  *See*

---

[33] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citation omitted).

[34] The Court may disregard allegation that are contradicted by facts established by documents attached as exhibits to the complaint.  *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Tex.*, 260 F. Supp. 3d 738, 757 (S.D. Tex. 2017), a*ff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 Fed. Appx. 916 (5th Cir. 2018).

16

*supra* at 11-12; Doc. 8-1.  HPD General Order 600-04 incorporates the various outdated Department of Justice recommendations Plaintiffs rely on to suggest a deficient pursuit policy.  *Compare* Doc. 4-1 at ¶23 *with* pgs. 89-92, 94-95.   Plaintiffs claim that HPD failed to, but "should have mandated and trained regarding safer alternatives regarding high-speed pursuits, including utilizing pursuit reduction technology,"[35] but the pleadings cite a 2017 article stating that HPD introduced a new tactic to end vehicular pursuits ***quickly***.  Doc. 4-1 at ¶25, n.16.  In addition to various "stopping techniques," HPD trains and mandates, when appropriate, the use of Rolling Roadblocks and Deflation Devices.  *Id.* at 95-96.  General Order 600-04 further mandates that "the dispatcher ***shall*** assign a helicopter to ***all*** pursuits," and requires ground units to "modify their speed accordingly, but maintain the use of their emergency equipment," when the helicopter crew informs dispatch that the suspect vehicle is in view. *Id.* at 95.  Canine units are also immediately dispatched to pursuits.  *Id.* at 94.

Also contradicted are Plaintiffs' claims that HPD fails to, but should, limit pursuits to primary and secondary vehicles.  *Id.* at 94.   Plaintiffs' final allegation, that HPD failed to limit "pursuits to primary and secondary vehicles ***responding to violent felonies***," is ludicrous and demands that which the constitution never has.  Officers commit no constitutional violation by pursuing a fleeing vehicle.[36] Doc. 4-1 at ¶111.   Nevertheless, HPD policy and training limits the initiation or continuation of a pursuit absent a specific public safety need and forbids pursuits when any alternative is available.  *See* Doc 4-1 at 89-100, 77-88; Doc. 8-1.

Plaintiffs offer no facts demonstrating that ***any*** of the above were the moving force behind any alleged violation of the rights of Jackson, Wiley, or Henderson.

Finally, even assuming the pleadings identified an actionable failure to train, without demonstrating a pattern of similar incidents in which citizens were injured, Plaintiffs fail to state a

---

[35] Doc. 4-1 at ¶111.
[36] *See O'Neal v. Cazes*, 257 Fed. Appx. 710 (5th Cir. 2007); *Scott v. Harris*, 550 U.S. 372, 384, 386 (2007).

claim.[37]

### E.     Plaintiffs fail to plausibly allege a failure to "investigate, supervise, or discipline."

The elements of a failure-to-supervise claim are the same as those for failure to train.[38] Plaintiffs claim that by failing to "adequately investigate, punish, and discipline prior instances of similar misconduct" the City "directly encourages future racial profiling in high-speed chases and violations of substantive [sic] due process, such as those alleged in this lawsuit." Doc. 4-1 at ¶¶75-76. Plaintiffs neither identify a single instance of a purported failure nor the alleged "similar misconduct" being alleged in this case.

Plaintiffs complain that HPD encourages and establishes a "pattern of racial profiling" by handling internal employment investigations differently to criminal investigations of the public. Doc. 4-1 at ¶¶7-8. Internal employment investigations are not at all comparable to criminal investigations. Moreover, the complained of procedures are mandated by State law. Texas Law has developed certain employment procedures that afford extra protection to police officers that are subject of complaint; Police officers have special protections regarding their employment that other municipal employees do not.[39] Plaintiffs conclude that "This process allows and authorizes officers to adapt their after-the-fact excuses to conceal the racially motivated conduct and thus, avoid real discipline," without identifying a ***single*** disciplinary matter that encouraged or established a pattern of racial profiling in this alleged manner. Doc. 1-4 at ¶7.

Plaintiffs allege HPD generally sustains about 25% of all officer complaints but did not sustain any of 47 racial profiling complaints received in twelve years, since 2010. "Statistics showing the

---

[37] *Leatherman v. Tarrant County Narcotics Intelligence*, 954 F.2d 1054 (5th Cir. 1992); *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989).

[38] *Conner v Travis County*, 209 F3d 794, 796 (5th Cir 2000), (quotations omitted).

[39] *See* TEX. GOV'T CODE §§ 614.021-.023. *See also City of Houston v. Wilburn*, 445 S.W.3d 361 (Tex. App.—Houston [1st Dist.], 2013); *Turner v. Perry*, 278 S.W.3d 806 (Tex. App.—[Houston 14th.] Dist., 2009); *Nelson v. City of Dallas*, 278 S.W.3d 90 (Tex. App.—Dallas, 2009); *Treadway v. Holder*, 309 S.W.3d 780 (Tex. App.—Austin, 2010).

frequency of complaints and how frequently they are sustained are insufficient to support a *Monell* claim." *Washington v. Smith*, No. 22-632, 2022 U.S. Dist. LEXIS 202974, at *47-48 (E.D. La. 2022). Plaintiffs do not "show why the prior incidents were wrongly decided and how the misconduct in the case is similar to that involved in the present action." *Id.* at *47-48.  Doc. 1-4 at ¶¶7-8.  Moreover, the admission that HPD has only received 47 racial profiling complaints since 2010, compared to the 650 officer complaints it receives in any single year, strongly suggests the absence of a pattern of racial profiling by the City or its officers.

### F.    No Ratification

"If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."[40]  Ratification, however, is limited to "extreme factual situations."[41]  "[A] policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848 (citation omitted).

Plaintiffs allege no factual basis for their repeated assertions that the City ratified "the use of racial profiling in high-speed pursuits and violating Wiley, Jackson, and Henderson's" rights.[42] Plaintiffs do not factually allege that any authorized City policymaker investigated and approved both an officer's decision to violate the rights of Jackson, Wiley, or Henderson, as well as the alleged wrongful basis for it.  Nor do they present the extreme factual scenario to which ratification may apply.[43]  Conclusory allegations that the City had a "custom, habit, practice, and/or policy" or ratification also fail, because to impose liability, the City must have ratified the specific violation of

---

[40] *Peterson*, 588 F.3d at 854 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).
[41] *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).
[42] Doc. 4-1 at ¶¶9, 83, 95, 107, 114, 115, 120, 121, 126, 127, Parts VII, VIII, IX.
[43] *Peterson*, 588 F.3d at 848; *Coon v. Ledbetter,* 780 F.2d 1158, 1161 (5th Cir. 1986); *Covington v. City of Madisonville*, 812 F. App'x 219, 227-28 (5th Cir. 2020).

the Plaintiffs' constitutional rights.  Doc. 4-1 at ¶¶9, 83.

G. **Plaintiffs fail to plausibly allege a municipal policy or custom that was the moving force behind an alleged constitutional violation.**

A plaintiff must plausibly establish that the policies or practices complained of were *the direct cause* of the constitutional deprivation.  *Zarnow*, 614 F.3d at 167; *Piotrowski*, 237 F.3d at 578.  "This connection must be more than a mere 'but for' coupling between cause and effect."[44]

Plaintiffs do not establish any policy, custom or widespread practice that was the moving force behind an alleged violation of Jackson, Wiley, or Henderson's rights, who were neither targets of traffic stops nor vehicular pursuits by HPD officers.  Neither Jackson, Wiley, nor Henderson, are alleged to have been in a neighborhood where any HPD officer initiated a traffic stop or vehicular pursuit.  *Id.* Plaintiffs concede that the officer driving the vehicle that struck Jackson was acting *in violation of HPD policies*, not pursuant to them.  Doc. 4-1 at ¶136.  The pleadings describe two fleeing drivers who drove dangerously and recklessly at high speeds, running red lights, and causing the injuries and deaths of Wiley and Henderson.  The third alleged pursuit by HPD officers of armed carjackers elsewhere had terminated and the suspects apprehended without any alleged injuries.  No facts are alleged to suggest any HPD officer was aware of the Plaintiffs or their races.   Doc. 4-1 at ¶¶61-63. Plaintiffs do not plausibly allege that they themselves, or the fleeing drivers they claim were chased, were chased for discriminatory reasons or unlawfully.

IV. <u>**Plaintiffs fail to plausibly allege a constitutional violation to support a § 1983 claim.**</u>

Because there is no underlying constitutional violation, Plaintiffs cannot state a section 1983 claim against the City.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

A. **No Fourteenth Amendment Substantive Due Process violation alleged.**

A due process violation results from deliberate decisions of government officials to deprive a

---

[44] *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

person of life, liberty, or property.  *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 196 (5th Cir. 2015) (citations omitted).  The Supreme Court has held "'high-speed chases **with no intent to harm** suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983.'"  *O'Neal v. Cazes*, 257 F. App'x 710, 713 (5th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)).  "[I]n the context of high-speed police chases, even deliberate indifference or recklessness would be insufficient to state a claim under the due process clause."  *Id.* at 713.

Plaintiffs do not plausibly allege any actions or intent to harm either Plaintiffs or the alleged fleeing drivers by the City or its officers.  Those failures are dispositive.  *Id. See also, e.g., Mireles v. City of Harlingen*, Civil Action No. B:13-81, 2013 U.S. Dist. LEXIS 186342, at *27-28 (S.D. Tex. 2013) (dismissing similar claims of alleged bystander).

 Having failed to allege an intent to harm, Plaintiffs claim that the City "intended to worsen Plaintiffs' legal rights and the legal rights of the drivers" by racially profiling "drivers and demographics of the neighborhoods" for "highspeed chase," "racially profiling them."  Doc. 4-1 at ¶¶80, 92.  These precise allegations were rejected by the Fifth Circuit in *O'Neal v. Cazes*, holding that: "whatever the Supreme Court meant by 'worsen their legal plight,' it is clear that [Deputy] Bouquet was far from crossing the 'constitutional line,' *Checki v. Webb*, 785 F.2d 534, 538 (1986), as he was engaged in legitimate law enforcement activity regarding the events concerning the mystery vehicle.'"  *O'Neal*, 257 F. App'x at 713-14.  Deputy Bouquet received a report of a suspicious vehicle repeatedly driving up and down a street and waiting in front of a residence, and initiated a pursuit seeking to identify whether the vehicle matched the description of the suspicious vehicle.  *Id.* at 714.

      (i)     **State Created Danger Theory is unavailable and inapplicable to Plaintiffs' allegations.**

Plaintiffs' alternative allegations present a state-created danger theory of liability of § 1983

liability, which the Fifth Circuit "has consistently refused to recognize." *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004). Plaintiffs could not recover under the state-created danger theory, even if it were available, because their pleadings negate any claim that (1) the City created or increased the danger to the plaintiff, *a known victim*; and (2) the City was deliberately indifferent to that danger. *Id.* at 307-08. Plaintiffs only implausibly allege that the City "increased the danger to all [bystanders], a large class of people that happened to include Plaintiffs."[45] The state created danger theory does not extend to foreseeable victims, *Lester*, 103 F. App'x at 815, because "increasing the risk of harm to unidentified and unidentifiable members of the public ... [is] not sufficiently willful and targeted toward specific harm to remove the case to the domain of constitutional law."[46] The plaintiff must establish that the City created a danger specifically to a known victim for a known reason, not a generalized risk. *Id.* General awareness of the dangerousness of an activity—which is all that Plaintiffs claim—even if extremely risky in nature, cannot support a finding of deliberate indifference.[47] Furthermore, the Fifth Circuit has explicitly "cautioned against finding liability under the state-created danger theory based upon an ineffective policy or practice in cases where the plaintiff's injury is inflicted by a private actor." *Doe*, 675 F.3d at 866.

### B.    No Fourteenth Amendment Equal Protection violation alleged.

To state a claim of racial profiling under the Equal Protection Clause and section 1983, a plaintiff must allege that he was treated differently than similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.[48]

---

[45] Plaintiffs' claims rely on the conclusory allegation that by racially profiling "drivers and demographics of the neighborhoods" for "highspeed chase," the "Defendant was [sic] consciously intended to harm the rights of Plaintiffs and others within the community." Doc. 4-1 at ¶¶ 80, 92, 105.

[46] *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999) (citing *Lester v. City of Coll. Station*, 103 F. App'x 814, 815 (5th Cir. 2004) (per curiam)).

[47] *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 865-66 (5th Cir. 2012); s*ee also Estate of C.A. v. Castro*, 547 F. App'x 621 (5th Cir. 2013) cert. denied, 134 S. Ct. 1893 (2014).

[48] *Pinedo v. City of Dallas*, No. 3:14-CV-958-D, 2015 U.S. Dist. LEXIS 5272, 2015 WL 221085, at *9 (N.D. Tex. 2015) (Fitzwater, J.) (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004)).

Plaintiffs do not allege that the City or any of its officers intentionally discriminated against them "because of membership in a protected class" or that they have been "intentionally treated differently from others similarly situated" because of their race. *Gibson v. Texas Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012). Indeed, Plaintiffs do not allege any deliberate act directed at the Plaintiffs. "Discriminatory intent of one official may [not] be imputed to another." *Stout v. Vincent*, 717 Fed. Appx. 468 (5th Cir. 2018) (unpublished); *see also Raina v. Veneman*, 152 F. App'x 348, 350 (5th Cir. 2005). The facts pled do not even support an inference that the City or its officers were aware of the presence or races of either Jackson, Wiley, or Henderson. *See, e.g., Smith v. New Orleans City*, No. 20-949, 2020 U.S. Dist. LEXIS 210079, at \*17-18 (E.D. La. 2020) (plaintiffs failed to allege that the officers were aware of their existence before the crash, let alone that they were intentionally seized).

## V.     Plaintiffs fail to plausibly allege any element of a Title VI claim.

To state a Title VI claim, plaintiff must plausibly allege that (1) "the defendant engaged in ***intentional*** discrimination based on race, color, or national origin; and (2) that the defendant received federal financial assistance." *Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013) (emphasis in original); 42 U.S.C. § 2000d. Where a plaintiff does not allege the existence of a discriminatory policy, he must show that (1) an appropriate person with authority— i.e., someone who could take corrective measures—had actual knowledge of discrimination against the plaintiff, and (3) that person responded with deliberate indifference. *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 237 (5th Cir. 2020).

Plaintiffs fail to state a Title VI claim for the same reasons they failed to state an Equal Protection violation. Further, Plaintiffs neither allege a policy of discrimination against Jackson, Wiley, or Henderson, nor an authorized person with actual knowledge of alleged discrimination against

them who responded with deliberate indifference.[49]  Moreover, Plaintiffs fail to establish that the City receives federal financial assistance for purposes of Title VI.

## VI.     Plaintiffs lack statutory standing and fail to state a 42 USC § 1982 claim.

Plaintiffs allege no facts to show the City intentionally racially discriminated against them in the sale or rental of real or personal property covered by section 1982.[50]  The alleged right to the "use [of] "public and private property, including [] vehicles, sidewalks, and roads in their neighborhoods," are not covered by section 1982.  Doc. 4-1 at ¶¶97, 108.  Section 1982 is limited to the sale or rental of private property, not the "use" of private property or public roads and sidewalks, which is all that Plaintiffs claim.[51]  Finally, Section 1982, like Section 1981, "requires an intentional act of racial discrimination by a defendant."[52]  Plaintiffs allege no facts to show the City intentionally racially discriminated against them in the sale or rental of real or personal property covered by section 1982.

## VII.    Plaintiffs fail to plausibly allege a claim for which Defendant's governmental immunity is waived under state law.

Plaintiffs do not state any claim within the Texas Tort Claims Act's limited waiver of immunity for alleged injuries caused by the government's negligent use of tangible personal property, motor vehicles, or motor driven equipment.  TEX. CIV. PRAC. & REM. CODE § 101.021.  Their claims fall within areas for which governmental immunity is expressly retained under Texas law, including: intentional torts,[53] the failure to provide or the method of providing police or fire protection, failure to perform act(s) not required by law; a governmental unit's decision not to perform an act or failure to

---

[49] *See, e.g., Paris v. Dall. Police Dep't*, No. 3:12-CV-0296-G-BH, 2012 U.S. Dist. LEXIS 90686 , 2012 WL 2520779, at * 5-6 (N.D. Tex. June 5, 2012) (recommending dismissal of racial profiling claim because plaintiff "failed to allege any facts to support his conclusory claim that there have been similarly-situated individuals of other races who have been treated differently when stopped and searched by these police officers or the City").

[50] *See Lee v. Ishee*, 383 F. App'x 499, 500 (5th Cir. 2010); *Vaughner v. Pulito*, 804 F.2d 873, 877 (5th Cir. 1986)); *Greene*, 451 U.S. at 123-24).

[51] *Love v. De Carlo Homes, Inc.*, 482 F.2d 613, 615-16 (5th Cir. 1973).

[52] *Powell v. Zurich Am. Ins. Co.*, 653 Fed. Appx. 292, 294 (5th Cir. 2016).

[53] *Id.* § 101.057; *City of Watauga v. Gordon*, 2014 WL 2535995, 13-0012 (Tex. 2014); *Quinn v. Guerrero*, 863 F.3d 353 (5th Cir. 2017) (alleged facts supporting state negligence claims against the city were intentional torts, and city was immune).

make a decision on the performance or nonperformance of an act for which the law gives them discretion; and discretionary acts.[54]

The City is immune from claims related to the alleged injuries and deaths of Wiley and Henderson because they were not caused by a motor vehicle driven by a City employee. *See City of San Antonio v. Maspero*, 640 S.W.3d 523 (2022) (City is immune from claims for damages caused by fleeing suspect's collision with third party). Jackson's allegations establish that the emergency and 911-response exceptions to the TTCA's limited waiver of immunity apply, as well as official immunity of the driver, and the City is immune as a matter of law. *Id.*[55] *See* Doc. 17 at 11-14).

## VIII.   Punitive damages are not recoverable against the City.

A municipality is immune from an award of punitive damages for actions brought under section 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Likewise, a plaintiff is barred from recovering exemplary damages against a municipality on state law claims.[56] Plaintiffs' claim for punitive damages should be dismissed.

## CONCLUSION & PRAYER

Plaintiffs fail to state a claim upon which relief may be granted against Defendant City of Houston, and further opportunities to amend would be futile. Defendant respectfully prays that the honorable Court grant this motion, and dismiss Plaintiffs' claims with prejudice, and for all other relief to which Defendant may be justly entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

---

[54] TCPRC §§ 101.055(3), 101.056(1), (2); *Christilles v. Southwest Texas State Univ.*, 639 S.W.2d 38, 42 (Tex. App.—Austin 1982, writ ref'd n.r.e.), overruled on other grounds by *Texas A&M Univ. v. Bishop*, 156 S.W.3d 580 (Tex. 2005).

[55] *See also City of Hous. v. Giron*, No. 01-21-00486-CV, 2022 Tex. App. LEXIS 4461 (Tex. App.—Houston [1st Dist.] June 30, 2022, no pet. h.) (immunity for claims arising from HPD officer swerving into vehicles while driving 100mph, responding to "officer assist" call).

[56] TCPRC § 101.024. *See Kuhl v. City of Garland*, 910 S.W.2d 929, 931 (Tex. 1995).

KELLY DEMPSEY
Section Chief, Torts/Civil Rights

By:    */s/ Melissa Azadeh*
MELISSA AZADEH
Senior Assistant City Attorney
Attorney in Charge
Texas Bar No. 24064851
Tel. (832) 393-6270
Melissa.Azadeh@houstontx.gov
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368
Main (832) 393-6491
Fax (832) 393-6259
**ATTORNEYS FOR DEFENDANT**
**CITY OF HOUSTON**

26

**VERIFICATION**

I hereby verify, under penalty of perjury, that the attached exhibits contain true and correct

copies of the certified public and judicial records they are represented to be.

July 20, 2023                                */s/ Melissa Azadeh*
Date                                                  Melissa Azadeh

**CERTIFICATE OF SERVICE**

I certify that on July 20, 2023, pursuant to Federal Rules of Civil Procedure, a true and correct

copy of the foregoing document, and any attachments, were delivered to all opposing counsel(s) by

electronic filing of same in accordance with the District's ECF service rules, and alternatively via e-

mail and/or facsimile transmission, to:

Michael Patrick Doyle
Patrick M. Dennis
Jeffrey L. Avery
Emma r. Brockway
Doyle Dennis LLP
3401 Allen Parkway, Suite 100
Houston, Texas 77019
service@doylelawfirm.com

Reginald E. McKamie, Sr.
Law Office of Reginald E. McKamie, Sr.
2120 Welch St.
Houston, Texas 77019
mckamie@mckamie.com

*/s/ Melissa Azadeh*
Melissa Azadeh

## APPENDIX

Charts prepared using data from Federal Bureau of Investigation Crime Data Explorer, available at: https://cde.ucr.cjis.gov/LATEST/webapp/#/pages/explorer/crime/crime-trend.

## Chart A

| Year | Chases alleged (Doc. 4-1 at ¶28) | Violent Crime Reported by HPD | Summary Crime Reported by HPD | Violent Crime Incidents reported by HPD | Violent Crime Offenses reported by HPD | All property crime incidents reported by HPD | All property crime offenses reported by HPD |
|------|------|------|------|------|------|------|------|
| 2000 | 445 | 21491 | 21491 | | | | |
| 2011 | 685 | 20892 | 20892 | | | | |
| 2012 | 572 | 21610 | 21610 | | | | |
| 2018 | 928 | 24217 | 24217 | **13,064** | **14,330** | **56,470** | **57,499** |
| 2019 | [omitted] | 25403 | 25403 | **23,535** | **25,642** | **103,646** | **105,311** |
| 2020 | 1168 | 29474 | 29474 | **26,916** | **29,882** | **99,647** | **101,276** |

## Graph B



Summary Crime Reported by the Houston Police Department 2000-2021

**Crimes are not necessarily cleared in the year they occur**

*Little or no data may be the result of an agency not participating, reporting zero incidents, changes in reporting, or being "covered by" another agency. In addition, classification, organization, and the hierarchy of agencies can vary by state. To learn more, please see agency-level data in the Crime in the United States publications. Source: Reported National Incident-Based Reporting System (NIBRS) data from Houston Police Department*

**Chart C**

| Year | **Percent of Violent Crime Offender Race[1]** | | |
|------|------|------|------|
| | Black or African American | White | Unknown |
| 2021 | 59% | 31% | 8% |
| 2020 | 59% | 32% | 8% |
| 2019 | 62% | 31% | 7% |
| 2018 | 63% | 30% | 6% |
| | | | |
| Year | **All Property Crime Offender Race[1]** | | |
| | Black or African American | White | Unknown |
| 2021 | 24% | 14% | 61% |
| 2020 | 27% | 15% | 58% |
| 2019 | 26% | 14% | 60% |
| 2018 | 26% | 13% | 60% |
| | | | |

**Chart D**

| Race | Number of HPD arrestees in 2021 | Number of HPD arrestees in 2020 | Number of HPD arrestees in 2019 | Number of HPD arrestees in 2018 |
|------|------|------|------|------|
| Black or African American | 16,292 | 16,426 | 18,164 | 22,173 |
| White | 14,953 | 15,041 | 14,523 | 16,285 |
| Asian | 751 | 594 | 713 | 850 |
| Native Hawaiian | 512 | 1,308 | 4,165 | 3,543 |
| Unknown | 21 | 39 | 16 | 14 |
| American Indian or Alaska Native | 10 | 12 | 18 | 31 |

29