United States District Court
Southern District of Texas
**ENTERED**
October 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANICE JACKSON, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-00052 |
| § | |
| CITY OF HOUSTON, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

Before the Court are the defendant's, City of Houston ("the City"), motion to dismiss (DE 17) and motion for judgment on the pleadings (DE 18). The plaintiffs, Janice Jackson, *et al.*, have responded (DEs 21 & 22), and the defendant has replied (DEs 25 & 26). After reviewing the motions, the pleadings, the relevant exhibits, and the applicable law, the Court determines that the defendant's motions should be **GRANTED in part** and **DENIED in part**.

**II.  FACTUAL BACKGROUND**

This case is about high-speed police chases endangering bystanders. Five plaintiffs related to three bystanders who were killed during high-speed chases sued the City. They argue that the City has a policy of racial profiling that leads to a

disproportionate number of high-speed chases in black neighborhoods. Three events are cited as foundational to the plaintiffs' case:

*Carl Wiley*

Shortly after midnight on February 7, 2022, Houston Police Department ("HPD") officers spotted a vehicle operated by a black man parked at a gas station. Allegedly seeing an open container, the officers turned on their emergency lights and approached. The man fled in his vehicle, leading HPD on a high-speed chase along Wilcrest Drive. Eventually the fleeing driver ran through a red light, striking Carl Wiley's vehicle and killing him. Plaintiff Arlene Gallien is Wiley's mother and the administrator of Wiley's estate. Plaintiff Camilla Simpson is Wiley's child.

*Rashad Henderson*

On December 17, 2020, HPD received a call that a black 16 year-old girl had taken her mother's car and ran away from home. HPD was told that the teenager may be experiencing a mental breakdown. HPD spotted her approximately six miles north of El Dorado Boulevard at Highway 3 and sent multiple units to chase her. The teenager drove erratically, speeding close to 100 miles per hour and turning her headlights on and off. After an hour, the HPD officers stopped their pursuit, with one officer saying, "it's not worth it to me. She's driving too crazy." The plaintiffs allege that HPD failed to disclose the call-off notice to officers in assisting jurisdictions, which caused the teenager to continue to drive in an unsafe, erratic manner.[1] She

---

[1] The plaintiffs do not specifically allege it, but presumably police officers from other jurisdictions had joined the chase, and the teenager knew it.

2 / 19

soon turned north on Galveston Road, where she struck Rashad Henderson's vehicle, killing him. The plaintiffs allege that HPD did not need to chase the fleeing teenager because HPD had GPS tracking on the vehicle and a helicopter was also in pursuit. Rashad's mother and father, John and Gynell Henderson, sued the City.

*Michael Jackson*

On December 4, 2021, HPD initiated a high-speed chase involving five armed black teenagers suspected of stealing a vehicle in a grocery store parking lot. Using the vehicle's internal GPS, HPD officers soon spotted the vehicle at 9100 Scott Street, where a chase ensued. The officers reported on their radio that they were chasing four or five black suspects, informing HPD Officer Orlando Hernandez—who was on patrol nearby—of the suspects' races. Officer Hernandez and his partner decided to join the chase, even though the plaintiffs allege it had already ended. Hernandez could not see the vehicle, nor was he assigned or authorized to join the pursuit. Hernandez drove his vehicle between 80 and 100 miles per hour down Reed Road in the predominantly black neighborhood of Sunnyside, where the speed limit is 40 miles per hour. The plaintiffs allege that Hernandez's driving was especially reckless given slippery conditions from a recent rain shower. As Hernandez turned at the intersection of Reed and Scott, he lost control of his vehicle and ran onto the sidewalk, striking and killing pedestrian Michael Jackson. HPD's internal records reported that Hernandez was "traveling at a[n] unsafe speed," and "performed a faulty evasive action." Hernandez received thirty days' suspension from his job and one year of probation. Michael's wife, Janice Jackson, sued the City.

### III. CONTENTIONS OF THE PARTIES

The plaintiffs bring ten claims against the City: six federal claims under Title VI and §§ 1982 and 1983, and four state law claims for wrongful death, survival and negligence. The plaintiffs allege that the City has two policies that caused their injuries: a failure to supervise and investigate complaints of racial profiling, and a failure to train officers about alternatives to high-speed chases.

The City argues that the plaintiffs' claims should all be dismissed. First, the City asserts that the plaintiffs lack standing because the fleeing criminals preclude the plaintiffs from tracing their injuries to the policies of the City. Additionally, the City argues the plaintiffs lack capacity to bring these claims. The City also argues that it is immune to state law liability because the City has not waived its sovereign immunity. Next, the City argues that the plaintiffs have not stated a valid *Monell* claim under Section 1983 because they have neither alleged legitimate constitutional violations nor stated policies that plausibly led to their injuries. Finally, the City argues that the plaintiffs lack statutory standing under Section 1982.

The plaintiffs respond that the fleeing criminals do not break the causal chain between the City's policies and the plaintiffs' injuries. They argue that they have capacity to bring these claims because they are either administrators of the victims' estates, no administration is pending, or they may bring them in their own behalf. The plaintiffs further retort that the City waived its sovereign immunity through the Texas Tort Claims Act, and that the emergency exception to waiver does not apply. The plaintiffs maintain that their *Monell* claims are valid and well-pleaded because

4 / 19

the plaintiffs suffered constitutional violations—deprivation of life and equal protection—due to the City's failure to supervise and investigate complaints of racial profiling and its failure to train officers about alternatives to high-speed chases. Finally, the plaintiffs insist that they have statutory standing for Section 1982 claims because the statute protects the use of public roads and sidewalks.

## IV.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits an action's dismissal for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A party invoking the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In making its ruling, the court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

If the Court has jurisdiction over any claims, it will apply the 12(b)(6) standard to those claims. "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace,*

*Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." "The plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court's review is limited to the allegations in the complaint and any documents that are attached to a defendant's motion to dismiss, referred to in the complaint, and central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## V. ANALYSIS & DISCUSSION

The Court's analysis prioritizes standing before proceeding to judgment on the pleadings for federal claims. The Court addresses the plaintiffs' state law claims last.

### A. Standing

"[A] plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." *Montano v. Orange Cnty., Texas*, 842 F.3d 865, 882 (5th Cir. 2016). The City argues that the plaintiffs fail to allege injuries that are fairly traceable to the City under §1982, § 1983 or Title VI.

Standing jurisprudence requires a causal connection between the complained-of conduct and the plaintiffs' injuries. "The injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). However, that bar against third party action "does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Ultimately, traceability tests the validity of the plaintiffs' causal theory. The Court first addresses Wiley and Henderson's causal theory before turning to Jackson's.

Wiley and Henderson's causal theory has three steps: 1) The City's failure to supervise and train its officers leads to 2) more high-speed chases in black neighborhoods, which in turn leads to 3) fleeing criminals injuring bystanders—specifically, Wiley and Henderson. The question is whether, as the City argues, the actions of the third party criminals sever the causal chain. This turns on whether the City exerted a "determinative or coercive effect" upon the actions of the third party criminals who killed Wiley and Henderson. *Bennett v. Spear*, 520 U.S. 154, 169 (1997). The Court concludes that the City did not. It is inconceivable that the City "determined" or "coerced" the fleeing criminals into killing Henderson or Wiley. *See Thompson v. Mercer*, 762 F.3d 433, 439 (5th Cir. 2014) (concluding that it was the fleeing driver and not the officer "who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice that [the officer] had to make.").

However, the Wiley and Henderson plaintiffs do have standing to pursue their equal protection and Title VI claims. "[W]hether a person has Article III standing to sue under [a particular statute] depends in great measure on the particular rights conferred by th[at] statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973). Racial discrimination is a valid injury for both equal protection claims and Title VI claims. *See Pathria v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013). Accordingly, the Henderson and Wiley plaintiffs have standing to pursue their equal protection and Title VI claims.

The analysis is different for Jackson. Officer Hernandez was operating within the scope of his employment when he struck Jackson, so there is no intervening third party. At this stage of litigation, it is plausible that the City had a policy of racial profiling, and that that caused Officer Hernandez to drive less safely than he would have in a non-black neighborhood. The plaintiffs allege that in the last 10 years, HPD has not sustained any of the 47 complaints of racial profiling it received. On the other hand, HPD generally sustains 25% of the complaints made against officers on other grounds. While this does not prove that the City has a policy of racial profiling, it is sufficient evidence to render the policy and its effect on officers' willingness to engage in high-speed chases plausible. It is furthermore plausible that this willingness caused Officer Hernandez to engage in a chase in a black neighborhood in less than favorable conditions, lose control of his vehicle, and strike Jackson. Accordingly, the Court determines that Jackson's injuries are traceable to the City's alleged policies.

1. *Jackson's Claims are Not Vicarious*

The fact that Ms. Jackson herself did not suffer physical injuries as a result of the alleged misconduct does not destroy her standing.

> "Federal civil-rights laws extend federal-question jurisdiction . . . by incorporating state wrongful-death statutes. Thus, an individual may bring a claim under federal civil-rights laws through Texas's wrongful-death statute . . . It follows that a litigant . . . may sue under §§ 1983 and 1985 for injuries to another."

*Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208–09 (5th Cir. 2016) (internal citations omitted). Texas' survival statute states that a "personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives." TEX. CIV. PRAC. CODE 71.021(b).

The City argues that the plaintiff is suing based on "general demographics of the unidentified neighborhoods," and is "claiming harm and relief that no more directly or tangibly benefits him than it does the public at large." This is not correct—Janice Jackson is the wife and survivor of an individual who was killed by an HPD officer at a particular location. Additionally, the Henderson and Wiley plaintiffs are members of the protected class against whom the City is allegedly discriminating—discrimination which they claim led to the loss of their loved ones. Texas' survival statute permits their claims.

### 2. *§ 1982 Statutory Standing, Fourteenth Amendment, and Substantive Due Process Claims*

The City argues that the plaintiffs lack standing for their § 1982 claims because they lack statutory standing. But "statutory standing is not jurisdictional." *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020). The Court's preceding analysis shows that Jackson has standing for her Section 1982 claim.

As with its Section 1982 arguments, the City's Fourteenth Amendment and Substantive Due Process arguments attack the merits of the plaintiffs' claim rather than their standing to bring them. The City's cited authorities almost all involve summary judgment motions that do not include standing discussions. The few that do discuss standing are not obviously relevant, and the City's brief does not clarify how those cases bear on this case. Given the Court's earlier analysis, the Court determines that Jackson has standing for her Fourteenth Amendment and Substantive Due Process claims. The Wiley and Henderson plaintiffs do not.

## B. *Judgment on the Pleadings for Federal Claims*

### 1. *Capacity*

In Texas, a personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. TEX. CIV. PRAC. CODE 71.021(b). Still, "for an heir to have standing to bring a survival action within the period allowed for administration of an estate, the heir must generally plead and prove that no administration of the decedent's estate is pending and that none is necessary." *Garcia v. Caremark, Inc.*, 921 S.W.2d 417, 421 (Tex. App. 1996). The City's argument that

Janice Jackson lacks capacity fails because she has been appointed dependent administrator of Michael Jackson's estate and is therefore the estate's legal representative. The same is true for Arlene Gallien. Gynell Henderson has pled that no administrator of the estate of Rashad Henderson is necessary, nor has one been appointed.[2] The plaintiffs have not responded to the City's argument that Camilla Simpson lacks capacity, nor have they otherwise shown her capacity. Accordingly, the City is entitled to judgment on the pleadings regarding Camilla Simpson's claims. She is dismissed from the case.

  2. *§ 1982 Claims*

The plaintiffs lack Section 1982 statutory standing. Section 1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C.A. § 1982 (West). First, nothing in the text of the statute suggests that it includes the use of public roads or sidewalks. Second, the plaintiffs cite no authority in this circuit for this interpretation. Third, a "cause of action based upon section 1982 . . . requires an intentional act of racial discrimination by a defendant." *Vaughner v. Pulito*, 804 F.2d 873, 877 (5th Cir. 1986). The plaintiffs' allegation, that the City intentionally profiles black neighborhoods and drivers, is too attenuated to show that the City intentionally discriminated against them in the sale, rental, or holding of real and personal property. The City is entitled to judgment on the pleadings for this claim.

---

[2] The City's reply brief does not address this response from the plaintiffs.

3. *Substantive Due Process Claims*

To establish a substantive due process violation, the plaintiff must demonstrate that the City's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8, (1998), *abrogated on other grounds by* Saucier v. Katz, 533 U.S. 194 (2001). The Supreme Court has directly addressed substantive due process violations relating to police chases. It held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, [and therefore are not] redressible by an action under § 1983." *Id.* at (1998) (a "police officer deciding whether to give chase must balance . . . the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, *or bystanders*.") (emphasis added).

Jackson does not argue that the City's conduct meets this high standard. Instead, she argues that the officer's opportunity to deliberate on whether to join the chase brings this situation into the easier-to-prove "deliberate indifference standard," "which rests upon the luxury enjoyed by . . . having time to make unhurried judgments." *Id.* Regardless, the indifference standard does not remove these facts from the Supreme Court's holding in *Lewis*. *Id.* at 854. The plaintiffs argue that the City "intentionally decided to profile the neighborhood and suspect, knowing that the risk to the public was substantial and there was high likelihood of a vehicle crash and potential injury," and that the City "intended to worsen Plaintiffs' legal rights and

the legal rights of the drivers by racial[ly] profiling them." But a practice or policy to profile black neighborhoods in general is not a present intention to harm suspects or bystanders *physically*. *Id*. Nor does it rise to an intention to "worsen their legal plight." *See O'Neal v. Cazes*, 257 F. App'x 710, 714 (5th Cir. 2007) (citations omitted) ("whatever the Supreme Court meant by 'worsen their legal plight,' it is clear that [the officer] was far from crossing the 'constitutional line,' as he was [arguably] engaged in legitimate law enforcement activity regarding the events concerning the mystery vehicle.").

Finally, the City argues that Jackson was not killed during a police chase, and the plaintiff's "state court pleadings and judicially noticeable public records conclusively [demonstrate] that this was a car accident completely unrelated to any alleged 'chase.'" The City does not cite to these public records, nor to where the state court pleadings conclusively demonstrate there was no chase. On the contrary, the plaintiff's first amended petition states that "a chase shortly ensued . . . Although the initial chase in pursuit of the suspects had ended, HPD Officer Orlando Hernandez and his partner initiated their own pursuit to join the chase." The City does not supply the necessary information to release the Court from its obligation to accept the plaintiff's well-pleaded fact as true.

### 4. *State-Created Danger Theory*

Jackson advances a state-created danger theory as an alternative substantive due process theory. This theory fails. First, *Lewis*, which also addressed a substantive due process violation, likely blocks the theory in the context of high-speed chases.

*Lewis*, 523 U.S. at 853. Second, the theory has never been adopted by this circuit. The Fifth Circuit's most recent discussion of the theory did not bode well for its future: "As for whether to adopt the state-created danger theory of constitutional liability moving forward, we are reluctant to expand the concept of substantive due process . . ." *Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023). Third, even if the theory were adopted by this circuit, it is still unavailing for the plaintiffs: "even if it is assumed that the state-created-danger theory applies, liability exists only if the state actor is aware of an immediate danger facing a known victim." *Lester v. City of Coll. Station*, 103 F. App'x 814, 815 (5th Cir. 2004) (concluding that because the victim was unknown to the policer officer, the theory is "inapposite" and the claim failed) (citing *Saenz v. Heldenfels Bros.*, 183 F.3d 389, 392 (5th Cir. 1999)). Jackson has not alleged that Officer Hernandez or HPD knew that Jackson was walking where he was, and that Hernandez's pursuit would endanger him *specifically*. Accordingly, Jackson's substantive due process claim fails.

    5. *Equal Protection*

To state a claim of racial discrimination under the Equal Protection Clause and § 1983, the plaintiffs "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir. 2001). A discriminatory intent "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.* The

14 / 19

plaintiffs' first amended petition satisfies this requirement at this early stage of litigation. The petition complains:

> For years, the policymakers within [the] City of Houston adopted a custom, practice, pattern, and usage of authorizing police officers to profile Black drivers and racially target predominantly Black neighborhoods when engaging in high-speed pursuits. Ultimately, this policy, custom, practice, and usage was the moving force that caused the death of Jackson. . . In contrast, HPD shields white neighborhoods . . . from similar chases.

DE 21-1. However, the plaintiffs still must satisfy the *Monell* requirements to sue the City under Section 1983. "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

The main thrust of the plaintiffs' argument is that the City permitted a practice of racially-influenced high speed chases by failing to supervise officers who engaged in such conduct in a disproportionate number of high-speed chases in black neighborhoods, or failing to discipline officers who received complaints of racial profiling. The plaintiffs complain of an investigation process that gives investigated officers a 48-hour window to answer written questions with a lawyer's assistance, the opportunity walk through the scene with a lawyer, and the chance to review all evidence against them before responding. Consequently, the plaintiffs claim that

HPD has sustained none of the 47 claims of racial profiling submitted in the last ten years, despite sustaining about 25% of complaints made against officers on other grounds. The plaintiffs further allege that the Chief of Police, the City's final policy maker in this domain, is responsible for reviewing and confirming data and complaints regarding racial profiling, and that he knew of this behavior. Finally, the plaintiffs alleged that the City should have trained officers regarding safer alternatives to high-speed pursuits in densely populated areas.

If a municipality has an inadequate policy of investigating and disciplining police officers, such policy or custom could be the moving force behind the alleged violation. At this early stage, the Court cannot say that there is no set of facts that would entitle the plaintiff to relief. Both the plaintiffs and defendant adduce facts and statistics,[3] but it is not appropriate for the Court to weigh evidence while considering a Rule 12(c) motion. The Court determines that the plaintiffs have borne their legal burden under *Monell*. Their equal protection claim may proceed.

6. *Title VI*

To state a Title VI claim, the plaintiffs must plausibly allege: "(1) that the defendant engaged in intentional discrimination based on race, color, or national origin; and (2) that the defendant received federal financial assistance." *Pathria v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013).

---

[3] For example, the plaintiff asserts that black citizens compose 22% of the population, 38% of traffic stops, and 56% of high-speed chases; that during the daylight, when HPD can more easily identify a driver's race, black driver compose 65% of HPD's chases, while they compose only 52% at night; and that neighborhoods that are over 30% black have disproportionately high numbers of high-speed chases, while neighborhoods that are over 30% white have disproportionately few.

The pleadings do not allege that the City of Houston receives financial assistance. The plaintiffs request leave to amend their pleadings, which the Court grants.

## C. State law claims

The plaintiffs' state law claims implicate sovereign immunity. "Sovereign immunity is jurisdictional." *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). "Sovereign immunity protects Texas and its political subdivisions—including municipalities like Houston—from suits for money damages." *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754, 762–63 (5th Cir. 2023). The plaintiffs bear the burden of establishing the state's waiver of immunity. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The Texas Tort Claims Act ("TTCA") provides this waiver. Specifically, the TTCA's "motor vehicle exception" waives sovereign immunity for personal injuries proximately caused by the wrongful act, omission, or negligence of an employee acting within the scope of his employment if the harm arises from the use of a motor vehicle. TEX. CIV. PRAC. & REM. CODE § 101.021. *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 197 (5th Cir. 2015).

Neither Henderson nor Wiley's deaths were proximately caused by a City employee's use of a motor vehicle. The City is therefore immune to liability for these claims and is entitled to judgment on the pleadings.

There is no dispute that Officer Hernandez was operating a vehicle in the scope of his employment when he struck Jackson. The motor vehicle exception applies to Jackson's claim. The next question is whether Jackson's negligence claim survives

Texas' "emergency exception." While the motor vehicle exception is an exception to the general rule of sovereign immunity, the emergency exception renews sovereign immunity for claims that arise:

> [F]rom the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the *laws and ordinances applicable to emergency action*, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

TEX. CIV. PRAC. & REM. CODE § 101.055. Texas Transportation Code § 546 supplies the relevant law of emergency action. § 546 permits speeding "as long as the operator does not endanger life or property," and running a red light or stop sign "after slowing as necessary for safe operation." This conduct is permissible while either responding to an emergency call or pursuing a suspect. The officer must use audible and visual signals—*e.g.*, flashing lights and sirens—when driving according to Section 546's more permissive rules. It is undisputed that Officer Hernandez was responding to an emergency call related to an armed carjacking, and that his siren and lights were on.

Given the allegations and undisputed facts, the Court cannot say that it is "certain that [Jackson] cannot prove any set of facts supporting this claim that would entitle [her] to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."). There are too many factual uncertainties for the Court to determine, at this stage, that Officer Hernandez did not endanger life or property; after all, Officer Hernandez "endangered life" to such a

degree that Jackson is now dead, and HPD itself determined that Hernandez was "traveling at a[n] unsafe speed." Accordingly, the emergency exception does not apply, and the City has waived sovereign immunity regarding Jackson's negligence claim. Jackson's state law claims against the City may proceed.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the defendant's motions are **GRANTED in part** and **DENIED in part**. Camilla Simpson is dismissed. The remaining plaintiffs' federal claims are dismissed except for their equal protection claim and their Title VI claim, for which they are permitted to amend their pleadings. The Henderson and Wiley plaintiffs' state law claims are dismissed. Jackson's state claims may proceed.

It is so **ORDERED**.

SIGNED on October 26, 2023, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge