# United States Court of Appeals
## for the Fifth Circuit

United States Courts
Southern District of Texas
FILED
August 05, 2025
Nathan Ochsner, Clerk of Court

No. 23-20574
CONSOLIDATED WITH
No. 24-20047

United States Court of Appeals
Fifth Circuit
**FILED**
July 15, 2025
Lyle W. Cayce
Clerk

JANICE JACKSON, *individually and as representative of* THE ESTATE OF MICHAEL WAYNE JACKSON; ARLENE GALLIEN, *individually and as representative of* THE ESTATE OF CARL WILEY, JR.; CAMILA SIMPSON, *as next friend* XXXXXXX XXXXX *a minor child*; GYNELL HENDERSON, *as representative of* THE ESTATE OF RASHAD HENDERSON; JOHN HENDERSON, JR.,

*Plaintiffs—Appellees,*

versus

CITY OF HOUSTON,

*Defendant—Appellant.*

---

Appeals from the United States District Court
for the Southern District of Texas
USDC Nos. 4:23-CV-52

---

Before GRAVES, ENGELHARDT, and OLDHAM, *Circuit Judges.*

KURT D. ENGELHARDT, *Circuit Judge:*

Innocent bystanders Michael Jackson, Carl Wiley, Jr., and Rashad Henderson were each struck and killed during different high-speed police chases in Houston, Texas. Wiley and Henderson were both struck by fleeing

suspects, while Jackson was struck by a Houston Police Department ("HPD") officer. All three decedents were black men, and all three incidents occurred in predominantly black neighborhoods. Their families sued the City of Houston, alleging that the HPD has a policy of racial profiling that leads to more high-speed police chases in black neighborhoods. The case is now before this court on an interlocutory appeal.

I.

The decedents' families brought several federal municipal liability claims against Houston for alleged violations of equal protection, Title VI, 42 U.S.C. § 1982, and substantive due process. Their theory is that Houston has a policy of authorizing HPD officers to racially profile black drivers and neighborhoods, and that this policy leads to more high-speed pursuits in black neighborhoods and ultimately caused the decedents' deaths. Plaintiffs also asserted state tort claims.

Houston filed a motion to dismiss for lack of subject matter jurisdiction and a motion for judgment on the pleadings, under Federal Rules of Civil Procedure 12(b)(1) and 12(c), respectively. The district court granted in part and denied in part both motions in a single memorandum opinion and order that dismissed all claims except the equal protection claims and Jackson's state law claims.[1] Houston then filed this interlocutory appeal, raising four issues: (1) whether Plaintiffs lack standing to bring their federal claims; (2) whether Plaintiffs failed to state federal claims; (3) whether Plaintiffs lack capacity to sue on behalf of the decedents' estates; and (4) whether the district court erred by denying Houston governmental immunity for Jackson's state law claims.

---

[1] For clarity, we label the claims using the decedents'—rather than the plaintiffs'—names.

## II.

### A.

The district court has not entered a final judgment in this case. Absent an exception, we lack jurisdiction to review non-final district court orders. *McKay v. LaCroix*, 117 F.4th 741, 745 (5th Cir. 2024). Houston relies on one such exception, 28 U.S.C. § 1292(b), for its challenges to Plaintiffs' federal claims.

Under 28 U.S.C. § 1292(b), we have discretion to review a non-final order if the district court certifies in writing that: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion on that question; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. After the district court issues this certification, a party has ten days to ask this court for permission to file the interlocutory appeal. *Id.* If an administrative or "motions" panel of this court grants that request, the party may file the appeal. *Id.*

The merits panel that ultimately reviews the appeal has an independent obligation to ensure that jurisdiction exists. *See Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593, 598 (5th Cir. 2025). Jurisdiction, however, is not limited to the certified controlling question: "Under § 1292(b), it is the order, not the question, that is appealable." *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398 (5th Cir. 2010) (en banc) (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)). Jurisdiction also extends to all questions that are material to that certified order. *Id.* But "order," for purposes of § 1292(b), does not necessarily encompass everything in the district court document labeled "Order." Instead it refers to the "district court's direction or command resolving a discrete motion or claim." *Little v. Louisville Gas & Elec. Co.*, 805

F.3d 695, 700–01 (6th Cir. 2015) (citing *FDIC v. Dye*, 642 F.2d 833, 835–37 & n.6 (5th Cir. Unit B Apr. 1981); *Homeland Stores, Inc. v. Resol. Trust Corp.*, 17 F.3d 1269, 1271–72 (10th Cir. 1994)); *see also* 16 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 3929 (3d ed.) ("The court of appeals indeed may treat what seems to be a single order as [] multiple order[s] for this purpose."). For example, when a district court denied a motion for summary judgment on four counterclaims in one "order," we only had jurisdiction to review the counterclaim that the appellant petitioned for interlocutory review of. *See Dye*, 642 F.2d at 837 & n.6 ("Although grouped nominally in the same order, the denials of summary judgment on the other three unrelated counterclaims should be considered different orders under s 1292(b).").

In some cases, identifying the certified order—or the questions material to that order—may be difficult. This is not such a case. Here, Houston sought, and the district court granted, certification premised on two controlling questions of law: (1) whether Plaintiffs have standing to assert their equal protection claims; and (2) whether Plaintiffs have standing to assert their Title VI claims.[2] These questions implicate two orders: (1) the district court's order denying Houston's Rule 12(b)(1) motion to dismiss Plaintiffs' equal protection claims for lack of standing; and (2) the district court's order denying Houston's Rule 12(b)(1) motion to dismiss Plaintiffs' Title VI claims for lack of standing. We therefore lack jurisdiction at this stage to review the district court's orders on Houston's Rule 12(c) motion for judgment on the pleadings.

---

[2] Houston's motion to certify repeatedly referenced Plaintiffs' "Title VII claims." Because Plaintiffs did not assert Title VII claims, the references to Title VII, rather than Title VI, are presumably clerical errors.

Our § 1292(b) analysis does not end there. Even though it is the subject of a certified order, we also lack jurisdiction to decide whether Plaintiffs have standing to assert Title VI claims, as resolving that question would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Silverthorne Seismic*, 125 F.4th at 601–02 (dismissing appeal brought under § 1292(b) for want of jurisdiction because "the certified question [was] not controlling, and the appeal would not materially advance the ultimate termination of the litigation"). After the district court determined that Plaintiffs had standing to bring their Title VI claims, it held that Plaintiffs nonetheless failed to state a Title VI claim. While the district court granted Plaintiffs leave to replead these claims, Plaintiffs have not done so. Because there are no live Title VI claims, a declaration that Plaintiffs lack standing to bring such claims would not advance the termination of this litigation.[3] Our review under § 1292(b) is therefore limited to whether Plaintiffs have standing to assert their equal protection claims.

B.

We review a district court's ruling on standing *de novo*. *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1083 (5th Cir. 2022). To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury-in-fact requirement is dispositive here.[4]

---

[3] While it could advance the termination of this litigation in a hypothetical scenario where Plaintiffs replead their Title VI claims, "[t]he purpose of § 1292(b) is not to offer advisory opinions rendered on hypotheses." *Silverthorne Seismic*, 125 F.4th at 598.

[4] Traceability is also independently dispositive for at least Wiley's and Henderson's claims. Traceability requires "a causal connection between the injury and the

Standing "often turns on the nature and source of the claim asserted." *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Because different claims protect against different injuries, an injury in fact for one claim may not constitute an injury in fact for a different claim. *See, e.g., id.* ("The reason that Equal Protection and Establishment Clause cases call for different injury-in-fact analyses is that the injuries protected against under the Clauses are different."); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press[.]"). The Equal Protection Clause "protects individuals from governmental action that works to treat similarly situated individuals differently." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012). Accordingly, to have standing to bring an equal protection claim, a plaintiff must have suffered an injury that stemmed from unequal treatment. *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 665 (7th Cir. 2015); *see also Moore*, 853 F.3d at 250 ("[E]xposure to a discriminatory message, without a corresponding denial of equal treatment, is insufficient to plead injury in an equal protection case."); *Carroll v.*

---

conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). An injury caused by a third party is traceable to a defendant, however, if the defendant coerced or determined the third party. *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Here, Plaintiffs allege that the independent actions of the fleeing suspects—not the HPD—killed Wiley and Henderson. Their argument that, but for Houston's alleged racial discrimination, the high-speed chases would not have occurred, and the fleeing suspects would not have hit Wiley and Henderson, is far from the coercion or determination required to trace a third party's conduct to a defendant. *Cf. id.* at 169-71; *see also Thompson v. Mercer*, 762 F.3d 433, 439-40 (5th Cir. 2014) (rejecting argument that officers created danger by trying to intercept a fleeing suspect who they had reason to believe posed a threat of physical harm, and concluding that it was the fleeing suspect, not the officers, "who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight" (quoting *Scott v. Harris*, 550 U.S. 372, 384 (2007))).

*Nakatani*, 342 F.3d 934, 946 (9th Cir. 2003) ("Being subjected to a racial classification differs materially from having personally been denied equal treatment . . . Carroll does not cite, and we do not find, any authority supporting the proposition that racial classification alone amounts to a showing of individualized harm.").

Each decedent here undoubtedly suffered *an* injury—all tragically died. But the question is not whether they suffered *an* injury. Instead we must ask whether their injuries are the sort that the Equal Protection Clause protects against. *See Moore*, 853 F.3d at 250. Their allegation that the HPD racially profiled black neighborhoods, leading to more high-speed chases in those neighborhoods, is a generalized grievance. The Supreme Court has "repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *United States v. Hays*, 515 U.S. 737, 743 (1995) (collecting cases). And this "rule against general grievances applies with as much force in the equal protection context as in any other." *Id.* "[E]ven if a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are *personally denied equal treatment* by the challenged discriminatory conduct."[5] *Id.* at 743–44 (emphasis added) (quotation marks and citation omitted).

Plaintiffs do not allege that Houston treated the decedents differently than similarly situated individuals because of their race. The decedents were struck and killed not because of the color of their skin, but because they were

---

[5] Following the Supreme Court's lead, we previously labeled this a "prudential principle." *See, e.g., Walker v. City of Mesquite*, 169 F.3d 973, 979 (5th Cir. 1999) (citing *Hays*, 515 U.S. at 742–43). The Supreme Court has since "found that label inapt," and "held that such suits do not present constitutional 'cases' or 'controversies'" and are therefore "barred for constitutional reasons, not 'prudential' ones." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (citations omitted).

unfortunately and coincidentally present at places of unknown sudden risk. Nothing in the pleadings indicates that white individuals, standing in the same places as the decedents, would not have suffered the same fate. Because the decedents' injuries were not the result of being personally denied equal treatment, they do not satisfy the injury-in-fact requirement. *See id.* Plaintiffs lack standing to assert their equal protection claims.

III.

Houston's final issue on appeal concerns Jackson's negligence claim.[6] The district court only had jurisdiction over this state law claim because Plaintiffs also asserted federal claims. There are now no remaining federal claims in this case. To give the district court the opportunity to reassess its jurisdiction, we VACATE the district court's holding that governmental immunity under the Texas Tort Claims Act does not shield Houston from Jackson's negligence claim and REMAND.

\* \* \*

The order of the district court is REVERSED as to Plaintiffs' standing to assert equal protection claims and VACATED as to whether governmental immunity shields Houston from Jackson's negligence claim. This appeal is otherwise DISMISSED WITHOUT PREJUDICE. This case is REMANDED for further proceedings consistent with this opinion.

---

[6] We do not reach Houston's third issue: Whether Plaintiffs lack capacity to sue on behalf of the decedents' estates. Houston provides no basis for our jurisdiction to resolve this issue at this stage. And because a plaintiff's status as the real party in interest with the capacity to sue is a prudential, not jurisdictional, requirement, *see Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) (citing FED. R. CIV. P. 17(a)), resolving this question is not a prerequisite to reaching any issue that is rightfully before us. *See Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417 (5th Cir. 2012) ("Unlike constitutional standing, prudential standing arguments may be waived.").